CHARLES EMERSON, PLAINTIFF IN ERROR, *v.* HORATIO N. SLATER.

In the case of Slater *v.* Emerson, 19 Howard, 224, this court held that where there was a contract to finish a railroad by a given day, the parties to which were the contractor with the railroad company of the one part, and a stockholder in the company of the other part, time was of the essence of the contract; and there could be no recovery on the written agreement without showing performance within the time limited; but added, that a subsequent performance and acceptance by the defendant would authorize a recovery in a *quantum meruit.*

This court now holds that the promise of the stockholder contained in the written agreement was an original undertaking, on a good and valid consideration moving between the parties to the instrument, and not a special promise for the debt, default, or misdoings, of another. Consequently, it is not within the operation of the statute of frauds.

The cases upon this point examined.

Being an original contract, parol evidence was admissible to show that the parties had, subsequently to the date of the contract, and before a breach of it, made a new oral agreement, on a new and valuable consideration, enlarging the time of performance, and varying its terms.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Massachusetts.

It was the same case which was before this court at a previous term, and is reported in 19 Howard, 224.

The substance of that case and the new view of the present one are fully stated in the opinion of the court, to which the reader is referred.

It was argued by *Mr. Hutchins* and *Mr. Cushing* for the plaintiff in error, and *Mr. Bates* for the defendant.

*Emerson* v. *Slater.*

The points of the argument of the counsel for the plaintiff in error, which are material to be stated in the present report, were the following:

I. At common law, a contract reduced to writing may, by parol agreement of the parties subsequently made, be varied, waived, or discharged, whether the same is a simple contract, or under seal.

Browne on Statute of Frauds, sec. 409, (*b*) sec. 423.

1 Greenl. on Evidence, secs. 302, 304.

Snow *v.* Inhabitants of Ware, 13 Met., 42.

Marshall *v.* Baker, 1 Appleton, 402.

Ballard *v.* Walker, 3 Johns. Cases, 60.

Goss *v.* Lord Nugent, 5 Barn. and Adol., 65.

1 Phillips Ev., (Cowen and Hill's Ed.,) p. 563, w. 987.

Sherwin et al. *v.* Rut. and Bur. R. R., 24 Vt., 347.

Vicary *v.* Moore, 2 Watts, 451.

Besker et al. *v.* Troy and Rut. R. R., 27 Vt., 766.

Neil *v.* Chever, 1 Bailey, (S. C.,) 537.

Munroe *v.* Perkins, 9 Pick., 298.

White *v.* Parkin, 12 East., 578.

Fleming *v.* Gilbert, 3 Johns. Rep., 528.

Keating *v.* Price, 1 Johns. Cases, 22.

Low *v.* Treadwell, 3 Fairf., 441.

II. And there is no distinction in this respect between a contract in writing at common law, and a contract required to be in writing by the statute of frauds.

Browne on Statute of Frauds, sec. 423.

1 Greenl. on Ev., secs. 302, 304.

Cummings *v.* Arnold, 3 Met. 486.

Stearns *v.* Hall, 9 Cushing, 31.

Caff *v.* Penn, 1 M. and S., 26.

Goss *v.* Lord Nugent, 5 Barn. and Adol., 58.

VI. There is a fact in proof in this case, which did not appear in the case when before this court before—and that is, that when Slater made the agreement upon which suit is brought, securities were placed in his hands by the principal debtor to indemnify him for his liability. His promise is not, therefore, within the statute of frauds

VII. A parol promise to pay the debt of another, in consideration of property placed by the debtor in the promissor's hands, is not within the statute of frauds. It is an original promise, and binding upon the promissor; and in this respect t is immaterial whether the liability of the original debtor continues or is discharged.

1 Browne on Statute of Frauds, sec. 187, p. 184.

Wait, appellant, *v.* Wait, 28 Vt., (2 Wash.,) 350.

Farley *v.* Cleveland, 4 Cowen, 432.

1 Smith's Leading Cases, 329.

Hindman *v.* Langford, 3 Strobhart's Rep., 207.

Cross *v.* Richardson, 30 Vt., 641.

Fisk *v.* Thomas, 5 Gray, 45.

Rand *v.* Mather, 11 Cushing, 1.

Olmstead *v.* Greenly, 18 Johns., 12.

Hilton *v.* Dinsmore, 21 Maine, (8 Shep.,) 410.

Cameron *v.* Clark, 11 Ala., 259.

Loring *v.* Lee, Spencer, (N. J.,) 337.

Goddard *v.* Mochbee, 5 Cranch C. C., 666.

Stanley *v.* Hendricks, 13 Iredell, (N. C.,) 86.

Lee *v.* Fontaine, 10 Ala., 755.

McKenzie *v.* Jackson, 4 Ala., 230.

Lippencott *v.* Ashfield, 4 Sandford, 611.

Westfall *v.* Parsons, 16 Barb., 645.

Todd *v.* Tobey, 29 Maine, 219.

VIII. The defendant having waived by parol the performance of the work at the day, thereby himself prevented performance, and he cannot avail himself of the non-performance

Browne Stat. of Frauds, secs. 423, 424, 425, 436, p. 486.

3 Johnson N. Y., 531.

2 Selden N. Y., 203.

IX. When this case was before this court before, no question was made nor discussion had, whether the promise of the defendant was within the statute of frauds; the question was, simply, whether *time* was of the essence of the contract; and the court decided that it was.

Emerson *v.* Slater, 19 Howard, 224.

X. The evidence offered by the plaintiff in error, under the

common counts, that the defendant in error had securities in his hands to indemnify him for his promise, took the case from the statute of frauds. It made him an original promissor for the work done after November 14, 1854, (the date of the contract,) and he is therefore liable upon the common counts upon a *quantum meruit* as an original debtor.

The counsel for the defendant in error contended that the decision of this court in the previous case involved the following propositions:

1. That the original contract between Emerson and the corporation, to build the bridges for the corporation, remained in full force, unaffected by the contract between Emerson and Slater.

2. That, by force of his contract, Slater stood in the relation of a surety for the corporation, for the amount for which he had agreed to become liable.

3. That the time of performance (December 1) was of the essence of Slater's contract, and he was not liable thereon, as Emerson had failed to perform within the time fixed.

If, therefore, the contract of November 14, 1854, was a special promise for the debt, default, or misdoings, of another, it was within the statute of frauds, and the alleged waiver, extension, and substitution, must be in writing, and could not be proved by parol.

This court had decided that performance by the 1st day of December was "*an essential part of this contract.*" And, manifestly, a contract cannot be varied in one of its essential parts. without making a new contract.

And when such new contract has been made, it must be declared on. A declaration on the old contract cannot be sustained by showing that, though the old contract has not been performed in one of its essential parts, which is a condition precedent to recovery, yet that a new bargain had been made, by which that essential part had been stricken out of the contract, and something different substituted in its place.

And, accordingly, this plaintiff declares on such new contract in his last count. And, inasmuch as the contract declared on is that of a surety, it must be in writing, and *wholly* in wri-

ting. The statute of frauds is not complied with by producing a contract which is partly in writing, while one of its essential parts rests in parol.

(The counsel then examined a number of English and American cases, to show that this change in the contract fell within the statute of frauds.)

The plaintiff, at the trial in the Circuit Court, introduced three deeds of land, from the railroad corporation to the defendant, dated three days after the defendant entered into the contract of November 14, and said to have been made to indemnify the defendant from his liability under the said contract.

But we are not aware of any case or dictum showing that because a surety, *after he has become bound as such*, takes security from his principal to indemnify himself against loss by his contract of suretyship, he thereby ceases to be a surety and becomes a principal debtor. There are decisions, no doubt well founded, that an absolute parol promise to pay the debt of another, in consideration of property put into the promissor's hands to enable him to pay the debt, makes the debt his own, and he is not a surety, within the statute of frauds.

But there is no evidence in this record to prove such a case. Slater's promise was not made in consideration of this property. There is no evidence of any agreement, even, to convey it to him at the time he entered into his contract. And it was not actually conveyed to him till three days afterwards. And it is not stated that when it was conveyed to him, it was to enable him to pay the debt, or that it was made *his property* in consideration of his promise to pay the debt. The contrary is stated. It was put into his hands " to *indemnify* the defendant from his liability in said contract, dated November 14, 1854, with the defendant." Until the defendant should be in some way indemnified, the land, in equity, belonged to the corporation. And as Slater's promise depended on the performance by Emerson before December 1st, if he should not so perform, Slater would not be indemnified, and would have no claim on the land.

It is submitted, no authority exists for the position, that a

*conditional undertaking to pay the debt of another* is taken out of the statute of frauds, because security is given by the principal to indemnify the surety, three days after the conditional contract of suretyship is made.

However true it is that assumpsit for a *quantum valebant* or *quantum meruit* will lie, where the terms of a special contract have not all been complied with, to recover the value of the labor and materials held and enjoyed by the defendant, yet nothing is better settled, than that no action can be maintained on the contract itself, without alleging, with exactness, performance in entire accordance with the terms of the contract, including that in relation to time of performance, and proving the allegation.

This proposition has been affirmed in nearly every State.

(The counsel then referred to decisions in this court, and the courts of almost every State in the Union.)

Emerson cannot recover, therefore, unless it be on the common counts; and not then, unless it be on the *quantum merui.* and *valebant.* Can he recover on these?

The agreement of November 14 shows that the money an notes given by Slater were to apply to the then indebtedness of the company to Emerson, and were not to apply to any work to be done heretofore—and this was one of the points argued at the former trial, contending that Slater was only a surety. That Emerson understood that he was doing the work for the company is evident from the fact that he charged the company with it, presented to them his bills, settled with its committee, and never presented any charges for work to Slater.

If, as this court has heretofore decided, Slater was a surety for the price of work done for the corporation, there can be no recovery had against him on counts for work, labor, and materials, furnished to himself. None were furnished to himself. The law will not imply a promise to pay another's debt. It requires an express promise in writing.

The evidence given on the trial has no tendency to show any promise by Slater, save by the written contract.

He knew Emerson was going on with his work, both before

and after December 1st. That Emerson was bound by his contract with the corporation to do so. And every act and word of Slater, and every omission to speak or act, is entirely consistent with the assumption, that if Emerson should finish the work before December 1st, he was to look to him for the notes; if he should not finish before December 1st, he was to look to the corporation for whom and under a contract with whom he was doing the work.

There is no case of recovering on a *quantum meruit* or *quantum valebant*, except for some work or materials done or furnished, and that too for the defendant.

But Emerson furnished no work or materials for Slater. They were all for the railroad company. They were for the benefit of and owned by the company, and Emerson was to be paid for them by the company. The contract between Emerson and Slater guards especially against their release. The company is the only party entitled to offset for any defect in the work, as they are the owners of the work, and as Slater made no stipulations as to its character, except that it be ready for laying the rails for one track. Besides, the completing the bridges for one track was but part of the work Emerson was doing under his contract. He went on and completed his contract with the company, and the whole work was done exactly as it would have been done if Slater's contract had never been made.

Suppose Emerson had died, become insolvent, or in some other way had become absolutely incapacitated from completing the work agreed on by December 1st, would Slater have been liable on a *quantum meruit?*

How long a time after December 1st would have been allowed to executors of Emerson to complete the work so as to bind Slater?

If Emerson and the railroad company had cancelled their contract, or had the company refused to allow Emerson to continue his work, would Slater have been liable on a *quantum meruit?*

Mosely *v.* Hunter, 9 Ired., 119.

If there was anything done distinctly for Slater, as it does

not appear what it was by the agreement, Emerson is bound to show what it was, in order to enable the jury to determine what was the amount of the *quantum meruit.*

He did nothing for Slater. His work was for the corporation, and every stockholder and creditor (of which Emerson is one) is liable if Slater is.

Mr. Justice CLIFFORD delivered the opinion of the court.

This case comes before the court upon a writ of error to the Circuit Court of the United States for the district of Massachusetts. It was an action of assumpsit, brought by the plaintiff in error against the present defendant, upon a written agreement, bearing date on the fourteenth day of November, 1854.

By the terms of the instrument, the plaintiff covenanted and agreed with the defendant, in consideration of the agreements of the latter therein contained, and of one dollar to him paid, that he, the plaintiff, would complete all the bridge work to be done by him for the Boston and New York Central Railroad Company, ready for laying down the rails for one track, by the first day of December next after the date of the contract. In consideration whereof, the defendant agreed that he would pay the plaintiff, within two days from the date of the agreement, the sum of forty-four hundred dollars in cash; and also give to the plaintiff, on the completion of the bridges, and when the rails for one track were laid from Dedham to the foot of Summer street, in Boston, his, the defendant's, five notes, for two thousand dollars each, dated when given, as provided, and made payable to the plaintiff or order, in six months from their date. Another stipulation of the agreement was, that the notes, when paid, were to be applied towards the indebtedness of the railroad company to the plaintiff, and that the agreement was in no way to affect any contract of the plaintiff with the railroad, or any action then pending between them.

When the declaration was filed, it contained three special counts, drawn upon the written agreement, together with the common counts, as in actions of *indebitatus assumpsit.*

Performance on the part of the plaintiff, and neglect and refusal on the part of the defendant to give the five notes specified in the agreement, after seasonable demand, constitute the cause of action set forth in the several special counts. They differ in nothing material to be noticed in this investigation, except that, in the first count, performance on the part of the plaintiff is alleged, according to the contract, on the first day of December, 1854, while in the second and third counts it is alleged at a period twenty days later.

An additional special count was afterwards filed by consent, which, in one respect, varies essentially from the other counts. After setting out the substance of the contract, it alleges that the defendant waived performance at the day stipulated in the agreement, and extended the time to the twentieth day of the same December, and that the plaintiff performed and completed the work within the extended time. Demand of the notes prior to the commencement of the suit, substantially as alleged, was admitted at the trial, as were also the execution of the agreement and the payment by the defendant of the forty-four hundred dollars.

As appears by the transcript, the cause has been twice tried upon the same pleadings. At the first trial, the verdict was for the plaintiff; but the defendant excepted to the rulings and instructions of the Circuit Court, and, after judgment, removed the cause into this court by writ of error.

Among the questions presented on the writ of error, the principal one was whether, by the true construction of the written agreement, time was of the essence of the contract. That question was directly presented by the fourth exception; and this court held, that the refusal of the circuit judge to instruct the jury, as prayed by the defendant, that the plaintiff could not recover on the special counts without showing that the work was completed by the day stipulated in the contract, was error. Accordingly, the judgment was reversed, and the cause remanded, with directions to issue a new venire.

In the opinion delivered on the occasion, this court said, in effect, that in cases where time is of the essence of the contract, there can be no recovery on the written agreement, with-

out showing performance within the time limited; but added, that a subsequent performance and acceptance by the defendant will authorize a recovery in a *quantum meruit.* Slater *v.* Emerson, 19 How., 239.

Failing to show performance at the day named in the agreement, the plaintiff, at the last trial, offered to prove by parol to the effect that, after the date of the agreement, and before as well as after the day specified for the completion of the work, the defendant, by his conduct, acts, and declarations, waived and dispensed with performance at the day named in the written agreement, and agreed to substitute therefor performance on the twentieth day of the same December, and to deem performance on the day last named as equivalent to performance on the day specified in the written agreement, and that the work was fully performed within the extended time.

Objection was made by the defendant to this testimony, upon the ground, that the written agreement declared on was a special promise for the debt, default, or misdoings of another; and that the alleged waiver, substitution, and extension, not being in writing, were within the statute of frauds; and the court sustained the objection, and excluded the testimony. To which ruling of the court the plaintiff excepted.

He then proposed to proceed upon the common counts, and offered evidence accordingly. After reading the agreement set up in the special counts, he introduced three deeds, each dated November 17, 1854, purporting to convey certain parcels of real estate therein described. They were each given by the railroad company to the defendant, to indemnify him for the liability he assumed in the before-mentioned written agreement with the plaintiff. Estimating the value of the real estate so conveyed by the considerations expressed in the respective deeds, it amounted in the aggregate to the sum of thirteen thousand five hundred dollars.

He also introduced a memorandum agreement between the defendant and the railroad company, whereby the former leased to the latter ten hundred and fifty tons of railroad iron, to be laid down by the company and used on their railroad. By the terms of the last-named agreement, the railroad iron

was estimated at the value of sixty-eight thousand four hundred dollars; and the company agreed to pay the defendant, for the use of the iron, five thousand dollars per month, the first payment to be made on the first day of March then next, and so upon the first day of each succeeding month, until the whole sum was paid, with interest on the same from a given day—the defendant agreeing, if there was no default of the payments, when the whole was paid, to sell and deliver the iron to the company for the estimated value, including the interest.

To secure these payments, together with the interest, the railroad company, by the same instrument, assigned and set over to the defendant the proceeds of the railroad, to an amount equal to the estimated value of the iron, with the interest, and authorized and required the superintendent of the road to retain in his own hands, out of the proceeds, a sum sufficient to pay the amount to the defendant, in the manner and at the times specified in the agreement.

Emerson's contract with the railroad company was also introduced, and makes a part of the record. It bears date on the seventeenth day of December, 1853, and provides, on the one part, that the plaintiff shall build and complete, sufficient for the passage of an engine over the same by the first day of May then next, all the bridging, as then laid out and determined upon by the engineer, from the wharf, near the foot of Summer street, in Boston, to Dorchester shore, and to complete the same as soon thereafter as might be reasonably practicable. On the other part, the agreement prescribes the compensation to be paid by the railroad company to the plaintiff, for building and completing the respective works therein designated and described, stipulating that eighty-five per cent. upon the estimated value of the materials furnished, and seventy-five per cent. upon the estimated value of the labor performed, should be paid monthly, as the work was done, and that the balance should be paid by the company upon the completion and acceptance of the whole work.

Parties to the suit are by law competent witnesses in the courts of Massachusetts; and under that law the plaintiff was examined in this case.

He also called and examined five other witnesses. From this parol testimony, it appears that securities were put into the hands of the defendant, deemed by him and the company adequate, at the time, to indemnify him against his contract with the plaintiff. Those securities, two of the witnesses say, consisted of real estate, and the bonds of the company for seventeen thousand dollars, secured by a mortgage upon the road. In respect to the real estate, it is to be observed that the deeds of conveyance bear date three days after the date of the contract; but the presumption from the circumstances is a reasonable one, that they were given in pursuance of the arrangement made at the time the contract was executed. It also appeared that the company failed in July, 1854, and that it was actually insolvent at the date of these transactions.

Prior to the date of the agreement of the 14th of November, 1854, the plaintiff had stopped work under his contract with the company, and refused to continue it. As soon as the contract with the defendant was made, he resumed the work on the bridges, and finished them about the middle of December, 1854; but the rails were not all laid by the company until the twenty-first day of the same month.

At the date of the contract between these parties, the defendant was a large stockholder in the corporation, and holder of the bonds of the company, which were secured by a mortgage of the road to trustees. During the progress of the work under the contract between these parties, and before the day therein named for the completion of the work, the officers of the company, or some of them, repeatedly stated to the plaintiff, in the presence of the defendant, and without objection on his part, that all the company wanted was, that the plaintiff should keep out of the way of the track-layers.

Three of the directors, including the defendant, on the twenty-fourth day of November, 1854, called on the plaintiff while he was at work on one of the bridges, and inquired of him if he could complete it by the fourth day of the then next month, stating to him the reason why it was desirable that he should do so—and by working nights and Sundays he completed it, according to their request.

Several witnesses state—and among the number the one who laid the rails for the company—that the track-layers were not delayed by the plaintiff; and the plaintiff testified that the defendant never objected because the bridges were not completed by the day specified in the written agreement. On being recalled, he further testified that he paid, for work done and materials furnished after that day, the sum of eleven thousand one hundred and fifty-seven dollars and eighty-four cents, and that he had not received a dollar for it from any source.

Thereupon the presiding justice ruled and instructed the jury that, upon this testimony, the plaintiff was not entitled to recover on the common counts, and directed the jury to return their verdict for the defendant. Accordingly, the jury found that the defendant never promised; and the plaintiff excepted to the rulings and instructions of the court.

Several questions were discussed at the bar, which, in the view we have taken of the case, it will not be necessary to decide.

'Both of the exceptions to the rulings and instructions of the court necessarily involve the construction of the contract between these parties; but the question presented is widely different from the one considered and decided by this court on the former record. On that occasion, the single question of any importance was, whether, by the true construction of the contract, it was agreed and understood between the parties to the instrument that the completion of the work at the time therein prescribed was a condition on which the obligation of the defendant to give the notes was to depend.

Contrary to the ruling of the circuit judge, this court held that the covenants of the respective parties were dependent, that time was of the essence of the contract, and remanded the cause for a new trial.

That rule of construction, beyond doubt, is the law of the contract, and no attempt has been made to evade or question it on either side in this controversy. But the question now presented is of a very different character.

It is insisted by the plaintiff that the promise of the defend-

ant was an original undertaking, on a good and valid consideration, moving between the parties to the instrument. On the part of the defendant, it is insisted that his undertaking was a special promise for the debt, default, or misdoings, of another, and so within the statute of frauds.

If the theory of the plaintiff be correct, then it would seem to follow that the rulings and instructions of the Circuit-Court were erroneous. Verbal agreements between the parties to a written contract, made before or at the time of the execution of the contract, are in general inadmissible to vary its terms, or to affect its construction. All such verbal agreements are considered as merged in the written contract. But oral agreements subsequently made, on a new and valuable consideration, and before the breach of the contract, in cases falling within the general rules of the common law, and not within the statute of frauds, stand upon a different footing. Such subsequent oral agreements, not falling within the exception mentioned, may have the effect to enlarge the time of performance specified in the contract, or may vary any other of its terms, or may waive and discharge it altogether. On this point, the authorities are numerous and decisive, of which the following are examples: Goss *v.* Nugent, 5 Barn. and Ad., 65; Nelson *v.* Boynton, 3 Met., 402. Speaking of the exceptions to the general rule, that parol evidence is not admissible to contradict or vary the terms of a written instrument, Mr. Greenleaf says: "Neither is the rule infringed by the admission of oral evidence to prove a new and distinct agreement upon a new consideration, whether it be a substitute for the old one, or in addition to and beyond it; and if subsequent, and involving the same subject matter, it is immaterial whether the new agreement be entirely oral, or whether it refers to and partially or totally adopts the provisions of the former contract in writing, provided the old agreement be rescinded and abandoned." 1 Green. Ev., 303. But the rule, so far as it is applicable to this case, is better stated by Lord Denman, in Goss *v.* Nugent, 5 Barn. and Ad., 665, wherein he says: "After the agreement has been reduced into writing, it is competent to the parties, in cases falling within

the general rules of the common law, at any time before the breach of it by a new contract, not in writing, either altogether to waive, dissolve, or annul, the former agreement, or in any manner to add to or subtract from or vary or qualify the terms of it, and thus to make a new contract." That rule was afterwards qualified by the same learned judge in a particular not essential to the present inquiry; and with that qualification it appears to be the rule constantly applied by the English courts, in cases not within the statute of frauds, to the present time. Harvey *v.* Grabham, 5 Ad. and El., 61; 1 Phil. Ev., (Cow. & Hill's ed.,) p. 563, n. 987; Munroe *v.* Perkins, 9 Pick., 298; Snow *v.* Inhabitants of Ware, 13 Met., 42; Vicary *v.* Moore, 2 Watts, 451; Cummings *v.* Arnold, 3 Met., 489; Fleming *v.* Gilbert, 3 Johns. R., 528.

On the other hand, assuming the theory of the defendant to be correct, that, by the true construction of the contract, his undertaking was a special promise for the debt, default, or misdoings, of the railroad company, then perhaps the better opinion is, according to the weight of authority, that a written contract within the statute of frauds cannot be varied by any subsequent agreement of the parties, unless such new agreement is also in writing. Marshall *v.* Lynn, 6 Mee. and Wels., 109; Goss *v.* Nugent, 5 Barn. and Ad., 58; Harvey *v.* Grabham, 5 Ad. and El., 61; Stowell *v.* Robinson, 3 Bing. N. C., 927; Stead *v.* Dowber, 10 Ad. and El., 57; Emmet *v.* Dewhurst, 8 Eng. L. and Eq., 88; Hasbrouk *v.* Tappan, 15 Johnson's R., 200; Blood *v.* Goodrich, 9 Wen., 68; Stevens *v.* Cooper, 1 Johnson's Ch. R., 429; Clark *v.* Russel, 3 Dall., 415. Decided cases, however, are referred to, from the Massachusetts reports, which evidently wear a different aspect, and it is contended by the counsel for the plaintiff that the principle adopted in those cases constitutes the rule of decision in this case; but it is unnecessary to determine that point at the present time, as we are of the opinion that the promise of the defendant contained in the written agreement was an original undertaking, on a good and valid consideration moving between the parties to the instrument. **Nelson** *v.* **Boynton, 3** Met., 396; Stearns *v.* Hall, 9 Cush., 31.

Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal debtor, are, in general, within the statute of frauds. Other cases arise which also fall within the statute, where the collateral agreement is subsequent to the execution of the debt, and was not the inducement to it, on the ground that the subsisting liability was the foundation of the promise on the part of the defendant, without any other direct and separate consideration moving between the parties. But whenever the main purpose and object of the promissor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability. Nelson *v.* Boynton, 3 Met., 400; Leonard *v.* Vredenburg, 8 Johns. R., 39; Farley *v.* Cleveland, 4 Cow., 432; Alger *v.* Scoville, 1 Gray, 391; Williams *v.* Leper, 3 Bur., 1886; Castling *v.* Aubert, 2 East., 325; 2 Parsons on Con., 306. Nothing is better settled than the rule, that if there is a benefit to the defendant, and a loss to the plaintiff, consequential upon and directly resulting from the defendant's promise in behalf of the plaintiff, there is a sufficient consideration moving from the plaintiff to enable the latter to maintain an action upon the promise to recover compensation. 2 Addison on Con., 1002, and cases cited. Other authorities state the proposition much stronger, authorizing the conclusion that benefit to the party by whom the promise is made, or to a third person at his instance, or damage sustained at the instance of the party promising, by the party in whose favor the promise is made, is sufficient to constitute a good and valid consideration on which to maintain an action. Violet *v.* Patton, 5 Cr., p. 150; Chitt. on Con., p. 28; Townsley *v.* Sumrall, 2 Pet., p. 182.

Apply these principles to the terms of the written agreement, in view of the attending circumstances and the subject matter, and it is quite clear that the promise of the defendant

was an original undertaking on a good and valid consideration moving from the plaintiff at the time the instrument was executed. On its face it purports to be a contract between the parties, for their own benefit; one agreeing to do certain work, and furnish certain materials, and the other agreeing to pay therefor a stipulated compensation. Their promises are mutual, and in one respect dependent. In consideration that the plaintiff engaged to do the work and furnish the materials by a given day, the defendant, on his part, agreed, among other things, when the work was completed, to give the plaintiff the five notes therein described. Reference was made to the contract of the plaintiff with the railroad company in the first instance, as descriptive of the work to be done, and of the materials to be furnished; and in the second instance, doubtless for the reason that, as a part of the transaction, the company had placed, or agreed to place, securities in the hands of the defendant, to indemnify him for the liability he thereby assumed to the plaintiff. Part of those securities were delivered over to the defendant at the time, and the residue as soon thereafter as the conveyances could conveniently be made. But when we consider the attending circumstances, the presumption is much stronger that the arrangement was one mainly, if not entirely, for the individual benefit of the defendant.

Prior to that date, the railroad company had failed, and was utterly insolvent, owning nothing, it seems, except the securities transferred to the defendant for his indemnity in this transaction, and the franchise of the road. Unlike what was exhibited in the former record, it now appears that the defendant had large interests of his own, separate from his relation to the company as a stockholder, which were to be promoted by the arrangement. He had leased to the company railroad iron for the use of the road, amounting in value to the sum of sixty-eight thousand dollars, and, as a security for payment, held an assignment of the proceeds of the road to that amount, with interest, which was to be paid in monthly instalments of five thousand. Now, unless the bridges were completed and the road put in a condition for use, there would be no proceeds;

*Emerson* v. *Slater.*

and as he had already taken into his possession all the available means of the company to secure himself for this new liability, should the road not be completed, the company could not pay for the iron.

In this view of the subject, it is manifest that the arrangement was one mainly to promote the individual interest of the defendant. Damage also resulted to the plaintiff, as is obvious from the whole transaction. Under his contract with the company, they had stipulated to pay him monthly eighty-five per cent. upon the estimated value of the materials furnished, and seventy-five per cent. upon the estimated value of the labor performed as the work was done. Failing to receive those monthly payments from the company, the plaintiff, as he had a right to do, stopped the works, and refused to proceed, in consequence of the failure of the company to make the monthly payments. To remedy this difficulty, and insure the completion of the bridges so as to render the road available for use, this arrangement was made by the defendant. It was not an arrangement to pay a subsisting indebtedness, but only for work to be done and materials to be furnished; monthly payments were discontinued, and the plaintiff was induced, with an advance of forty-four hundred dollars, to resume and complete the work at his own expense. Without detailing more of the evidence, as exhibited in the statement of the case, it will be sufficient to say that, in view of all the attending circumstances, we think it is clear that the promise of the defendant was an original undertaking upon a good and valid consideration moving between the parties to the written agreement.

For these reasons, we think the plaintiff had a right to proceed upon the common counts, and that it was error in the presiding justice to direct a verdict for the defendant. It is also contended by the plaintiff that the effect of the indemnity given by the railroad company to the defendant was to take the contract out of the statute of frauds; but we do not find it necessary to determine that question at the present time.

The judgment of the Circuit Court is therefore reversed, with costs, and the cause remanded with directions to issue a new venire.