## HARP v. HAMILTON. (No. 788.)

(Court of Civil Appeals of Texas. Amarillo. May 15, 1915. On Motion for Rehearing, June 5, 1915.)

1. ANIMALS ⪪26—AGISTER'S LIEN.

One pasturing cattle for a purchaser, who had given a note and a chattel mortgage for the purchase money, and who had agreed to pay $600 on account of pasturage, had a lien upon the cattle remaining in his possession, as against the purchaser, as security for his debt.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 54–69; Dec. Dig. ⪪26.]

2. FRAUDS, STATUTE OF ⪪32—PROMISE TO ANSWER FOR DEBT OF ANOTHER.

Upon the surrender of a debt against another in consideration of a third person's promise to pay it, only the promise and the debt of the promisor remain, and the primary debt is discharged, so that there can be no collateral liability, within the statute of frauds, which relates to promises which are distinctly collateral to the undertaking of the party originally liable.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 49; Dec. Dig. ⪪32.]

3. FRAUDS, STATUTE OF ⪪23—PROMISE TO PAY DEBT OF ANOTHER—ORIGINAL OR COLLATERAL PROMISE.

Where cattle were sold by defendant, and payment secured by chattel mortgage, and the purchaser became indebted to plaintiff for their pasturage, and upon a settlement agreed to pay plaintiff $600, and defendant, after his transfer of the mortgage, acting with the purchaser, sold the cattle remaining in pasture and promised to pay the amount, in consideration of their possession, the plaintiff relinquished a lien or right to possession, and defendant acquired possession, to which he was not otherwise entitled, so that the defendant's promise, though not extinguishing the original indebtedness, was an original promise, not within the statute of frauds; and even if defendant was a mere agent of his assignee, yet where he was interested in the mortgage, and admitted that he was obliged to pay it, his parol promise to pay the amount out of the proceeds of sale was not within the statute, so that plaintiff might recover thereon.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. ⪪23.]

4. CONTRACTS ⪪51—CONSIDERATION—"BENEFIT" TO PROMISOR.

A valuable consideration for a promise may consist of a benefit to the promisor; "benefit" meaning that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 223, 224; Dec. Dig. ⪪51.

For other definitions, see Words and Phrases, First and Second Series, Benefit.]

5. CONTRACTS ⪪52—CONSIDERATION—"DETRIMENT" TO PROMISEE.

A valuable consideration for a promise may consist of a detriment to the promisee; "detriment" meaning that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 223, 224; Dec. Dig. ⪪52.

For other definitions, see Words and Phrases, First and Second Series, Detriment.]

### On Motion for Rehearing.

6. PLEDGES ⪪11—WHAT CONSTITUTES.

While an actual delivery usually accompanies and constitutes a pledge of personal property, yet, where property is already in the hands of a creditor, an agreement that it may be held as collateral security still leaves the transaction a "pledge."

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. ⪪11.]

7. FRAUDS, STATUTE OF ⪪33—CONSIDERATION—BENEFIT TO PROMISOR.

Where the seller of cattle took a chattel mortgage on them which permitted foreclosure only by public sale, assigned his mortgage, and, in order to get possession from one to whom the purchaser had agreed to pay a certain amount for pasturage, in order that a private sale might be made, agreed to pay such amount or to pay it out of the proceeds of the sale, his interest in the mortgage, which he admitted he was "behind," together with his possession of the cattle, were a benefit sufficient to sustain his promise to pay the amount due for pasturage.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. ⪪33.]

Appeal from Floyd County Court; Chas. H. Veale, Special Judge.

Action by R. N. Hamilton against A. E. Harp and others. Judgment for plaintiff, and defendant Harp appeals. Affirmed.

Martin, Kinder, Russell & Zimmerman, of Plainview, for appellant. A. P. McKinnon, of Floydada, and Mathes & Williams, of Plainview, for appellee.

HENDRICKS, J. C. W. Morgan pastured certain cattle with R. N. Hamilton, the appellee. On account of some dispute, with reference to the pasturage bill, Morgan and Hamilton had a settlement; the former agreeing to pay the latter the sum of $600, on account of said pasturage. Previous to that time, the cattle had been purchased by Morgan from the son of A. E. Harp; the latter negotiating the sale of said cattle for his son. Morgan executed a note to A. E. Harp, the appellant herein, also a chattel mortgage on the cattle, representing the purchase money, which mortgage also covered certain feed. The note and chattel mortgage became considerably overdue, and a majority number of the cattle were sold, and shipped, with 23 head left in Hamilton's pasture; the latter claiming that said number were retained by him as an agistment for the payment of the pasture debt. The mortgage and note held by Harp in the meantime had been transferred to one Wilkins, of Oklahoma City.

Harp, who had transferred the mortgage and note to Wilkins, acting with Morgan, sold the remnant of the cattle to one Cox, and

Hamilton alleges that Harp, claiming a mortgage on the cattle, obtained the possession of the same from him upon the agreement that Harp would weigh and deliver the cattle to the purchaser, and pay the pasturage debt out of the proceeds of the cattle; that he (Hamilton) had refused to deliver said 23 head of cattle to Harp and Morgan until said debt for pasturage was paid, but finally delivered the same upon the representation and promise of Harp.

The application of the statute of frauds, as to the promise of Harp to pay the debt of Morgan, is the real issue in this cause.

The jury, upon the submission of special issues by the trial court, found every issue in favor of Hamilton and against Harp and Morgan, finding against Harp that he agreed to pay the sum owing by Morgan for pasturage at the time of the delivery of the 23 head of cattle by Hamilton, also finding more specifically that the cattle were taken from plaintiff's possession upon the promise and agreement that Harp would hold $600 out of the proceeds of their sale, if Hamilton would deliver the cattle.

In support of the judgment, we conclude that Harp was interested in the mortgage on account of statements testified to by witnesses claimed to have been made by Harp with reference to the chattel mortgage, coupled with the testimony of Harp that he stood behind the mortgage.

[1] Hamilton had a second lien upon the cattle and was entitled to the possession of the same as security for the payment of his debt. There is a contention by Harp that, as the agent of Wilkins holding the mortgage, he had the right to take possession of the cattle after the maturity of the debt and default by Morgan. However, this right, under the peculiar provision of the mortgage, was not existent, except for the purpose of selling the property at public vendue. He did not have the legal right to obtain, over Hamilton's protest, the possession of said cattle to effectuate a private sale of the same. Neither did Morgan, the owner of the cattle, have the right to demand and take possession of same from Hamilton, destroying the agister's second lien, without the payment of the debt; and Hamilton had a right to hold the cattle until they were taken by one entitled thereto under proper legal process.

Appellant asserts a proposition, as a final test, that if the original debtor is not discharged, and if the original debt continues to subsist, the promise is within the statute. Appellant is evidently deducing this proposition from some expressions by our own courts, not, however, applicable in the slightest to the status of cause presented here.

[2] The courts, of course, have always held without any contradiction that upon surrender by one of an obligation against another, in consideration of a promise by a third person to pay that debt, though the promise, when made, is in a sense an obligation to pay the debt of another, however, when the primary debt is discharged, there is no such thing as another's debt; there is only one promise and one debt remaining (the promisor's), and there can be no collateral liability. That was the condition disclosed by the case of Warren v. Smith, 24 Tex. 486, 76 Am. Dec. 115, cited by appellant. The Supreme Court, however, announced this rule in that case, which has always been the primary principle in connection with this statute:

"It is well settled that the clause of the statute of frauds, which relates to promises to answer for the debt * * * of another person, has reference to promises which are distinctly collateral to the undertaking of the party originally liable"

—and which rule is really the principal basis of the opinion of Justice Dunklin, in the case of Williams v. City National Bank, 166 S. W. 130, cited by appellant in his brief, and argued to the court, as sustaining his position. As disclosed by that case, the promise, whatever may be said of the consideration moving to Williams, the promisor, was distinctly one of a collateral nature.

[3-5] But appellant would be unable to find a case by our Supreme Court, or any other considered case by any other Supreme Court, that if a third party promises a creditor that he will pay such creditor the antecedent debt of another person, upon a sufficient independent consideration moving to the promisor, where the promise and liability to pay are primary, and not collateral, such à promise is within the statute of frauds, because the original debt continues to exist. In Muller v. Riviere, 59 Tex. 642, 46 Am. Rep. 291, the court distinctly announced that it is not essential in all cases that the original liability should have been extinguished by virtue of a plaintiff's promise to pay the debt of a third person; the court meaning that there are promises upon independent considerations creating an independent duty upon the part of the promisor to pay the debt, though the original debt is still existent, and that such promise is not within the statute.

As we interpret this record, appellant's contention that, if the original debt continues, the promise is within the statute, if sustained, would really place us, in principle, in opposition to the line of cases, where a third party promises to pay a creditor another's debt, upon some valuable consideration, extended by the debtor to him (the promisor). In those cases, though the promisor becomes the principal, and the debtor becomes the surety, as between themselves, however, to the creditor, they are both primarily liable, not one for another, and the original debt is not discharged, but the promisor, upon an independent consideration to him, on account of a business concern of his own, makes the debtor's obligation his obligation. Spann v. Cochran & Ewing, 63 Tex. 242; Morris v. Gaines, 82 Tex.

257, 17 S. W. 538; Lemmon v. Box, 20 Tex. 333.

Appellant says, however, that the case of Starr v. Taylor, 56 S. W. 543, by the San Antonio court, "is exactly in point, especially where there is no agreement to discharge the original debtor." If, in that cause, Miller, the debtor of Taylor's, turned over a crop to Starr, in consideration that Starr would pay Miller's debt to Taylor, and the promise was one of primary liability, and not collateral, it is in direct conflict with the Supreme Court, according to the rule announced in the cases cited; and if the status of the case is as stated by us, in principle, it is really in conflict with the case of Lyons v. Daugherty, 26 S. W. 146, decided by the same court and the same judge. Reading the Starr-Taylor Case, we are unable to definitely state the nature of the promise finally considered. There is, however, an intimation, in the opinion, that the promise is a collateral one.

"* * * There are two kinds of promises of extensive use in the dealings of community, which, in form and effect, very much resemble each other; each being to answer or pay a debt already due or owing from a third person, yet wholly different in respect to the motive and consideration. In the one class the promisor has no personal interest nor concern, and his undertaking is made solely upon some fresh consideration passing between the creditor and his debtor. This class is within the statute. In the other, the promise may be in the same form, and, when performed, may have the same effect, but it is made as the incident of some new dealing in which the promisor is himself concerned and upon a consideration passing between the creditor or the debtor and himself. This class, which may include a great variety of particular examples, is not within the statute." Mallory v. Gillette, 21 N. Y. 420.

This is a clear, general presentation of the two classes, though we are not adopting the particular statement; with reference to the second class, when it is said that the promise in that class may be in the same form as the promise in the first class. This we tried to make plain, inefficiently perhaps, in the cause of Enterprise Trading Co. v. Bank of Crowell, 167 S. W. 297, a case where a corporation had turned over the principal corpus of its property to a stockholder and director as a managing trustee, and for aught we know, upon a reasonable compensation for his services, to sell said property for the purpose of concluding the affairs of the corporation. This trustee, with the knowledge of the other directors, was about to remove the property to another portion of the state and convert it into the stock of a new corporation; and the bank, as pledgee of some of the stock to another's debt, intending to enjoin the removal by this managing trustee of said property for said purpose, forbore this right in consideration of the promise of the managing trustee to pay the debt. We held that this particular managing director and trustee, in possession of said property, being equitably interested in the goods as a stockholder and of any surplus remaining after its debts were paid, and entitled to reasonable compensation

for his services, and having obtained a right against the promisee to remove the goods, which the latter could have compelled him to relinquish, the transaction embraced a sufficient moving consideration to the promisor to sustain his promise, which was primary, not collateral, to pay said debt. The promisor acquired a right which he would not have enjoyed if the bank had not relinquished the right it possessed. The detriment to the promisee merged into a benefit to the promisor. Though not cited, the case in principle is sustained by the cases of Emerson v. Slater, 22 How. 28, 16 L. Ed. 360, and Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, where stockholders of corporations made certain promises.

When Hamilton delivered the cattle to Harp and Morgan, for the purpose of effectuating the previous contract of sale, he relinquished a right which Harp could not otherwise have extinguished, except by taking possession of the cattle for the purpose recited in the mortgage, not for the purpose of private sale. Harp, being behind the mortgage and interested, acquired a legal right to the possession of the property, which, under the law, he did not theretofore possess.

To go back to elementary principles for a moment:

"A valuable consideration for a promise may consist of a benefit to the promisor or a detriment to the promisee. * * * Benefit, as used in this rule, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. Detriment means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise." Page on Contracts, vol. 1, § 274.

When Hamilton, under the conditions, relinquished his possession, and really his lien, he relinquished a legal right. Harp obtained one he did not theretofore possess. Why, in law, is not such a condition as presented in this record a detriment to the promisee, also in law the acquisition of a right constituting a benefit to the party promising?

If Harp made a promise to pay the debt, it was not a collateral promise, but he was independently liable, though Morgan was still liable. The clearest enunciation we have of this principle is by the Court of Appeals of New York, in the case of White v. Rintoul, 108 N. Y. 222, 15 N. E. 320, quoted by us in Enterprise Trading Co. Case, and which we will again quote:

"* * * Where the primary debt subsists, and was antecedently contracted, the promise to pay it is original, when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." ·

However, if the promise was one, as indicated by a finding of the jury, and sufficiently supported by the testimony, as to the real issue in this cause, that Harp agreed to hold $600 out of the proceeds of the sale and pay

the debt, if plaintiff would deliver the cattle, for other reasons the contract would not be within the statute of frauds.

We rather lengthily discussed the other phase because appellant and appellee, in their briefs, follow the same line, and we desired, if we were able, to clarify the positions.

Our statute of frauds is based, of course, upon the English statute. The leading case of Williams v. Leper, 3 Burr., as extracted from the books and the reports, was one where:

"The landlord had a legal pledge. He enters to distrain. He has the pledge in his custody. The defendant agrees that the goods shall be sold, and the plaintiff paid." Browne on Statute of Frauds, § 206, p. 264.

That author says:

"It seems * * * that the English courts have clearly apprehended the force of William v. Leper as embracing mere cases of a trust assumed by the defendant in regard to property in the hands or under the control of the plaintiff, and in which the discharge of the third person's debt was merely incidental to the execution of that trust." Section 209.

He also says (section 206):

"The judges really treat it, not as a promise to pay the debt, in consideration of the forbearance to distrain, * * * but as a transaction by which certain goods were intrusted out of the landlord's constructive possession, and put in Leper's hands, for the purpose of his converting them into money wherewith to pay, among other debts, that due to the landlord. It was a mere case of agency or trust."

In that cause Leper, as an agent of other creditors, having notice of the landlord's intention to distrain the goods, and obtaining constructive possession of the property, promised the landlord to pay the arrear of rent if he would desist from distributing, and was held liable. There are numerous cases, English and American, following this particular case, to the effect that where the plaintiff has relinquished an advantage in consequence of the defendant's promise, and that advantage has inured to the benefit of the defendant, especially if the promise is primary and not collateral, the statute of frauds does not apply. Browne on Statute of Frauds, § 205, notes.

"From the circumstances that the goods in question passed into the hands of the defendant when the lien was relinquished, it might be inferred that it inured to his benefit." Browne, § 205.

In this case Harp contends that he was merely an agent. He could, however, be an agent for Wilkins and also interested in the subject-matter of the mortgage. We presume from his statement that he was behind the mortgage; that he meant that he was obligated to pay it. He was certainly interested, and when Hamilton delivered the cattle, knowing that the same were to be sold, he necessarily lost his agister's lien when Harp delivered them to Cox; and Harp obtained a right, under this agreement, he would not have otherwise been entitled to; and, upon the finding of the jury that Harp promised to pay the agister's debt out of the proceeds of the sale, upon that phase of the case Hamilton should also recover.

Before leaving this subject, we will say that we might have decided the case of Fletcher v. Puckett, 170 S. W. 830, upon the sole question of collateral liability, without the discussion of what constitutes a sufficient benefit to the promisor, as a new consideration to him. We had not the question before us in that cause whether, if the consideration to the promisor had been sufficient, but this promise being collateral and not primary, the promise would not be within the statute. We only considered the question of the sufficiency of the benefit as a consideration to the promisor, and, holding it not sufficient, held that the statute applied. The case may leave the impression that if the benefit to the promisor had been sufficient, though the promise was collateral, the statute would not apply. That is an undecided question by this court. Neither do we decide this question: If the promise to pay the debt of another is one of assumed primary liability, not collateral, to pay such debt, but is based, not upon a consideration as a benefit to the promisor, but merely a detriment to the promisee, whether the promise is within or without the statute?

There are no other assignments deserving mention, and we order an affirmance of the judgment.

### On Motion for Rehearing.

We desire to correct the statement in the original opinion, characterizing the lien of Hamilton upon the 23 head of cattle as an agister's lien. Upon the testimony of Hamilton, and upon a finding of the jury, the record develops a pledgee's lien, secondary, of course, to the mortgage lien, but the change of the form of the security does not assist the appellant in the case.

[6] It is true that an actual delivery usually accompanies and constitutes a pledge of personal property; but, where property is already in the hands of a pledgee, an agreement that it may be held as collateral security by the person who has the possession still constitutes the transaction a pledge. Jones on Pledges, § 25, p. 20.

[7] On the question of the benefit to Harp, based upon the record, to sustain a consideration to him, as the promisor to pay the debt of another, the testimony of his declarations of his interest, though of a general nature, added to his own testimony that he was behind the mortgage, coupled with the acquisition of the possession of the cattle, for the purpose of consummating a sale of the cattle made by himself and Morgan to Cox (a right which was theretofore not possessed), are amply sufficient for that purpose.

The motion for rehearing is overruled.