## KNIGHT v. KISER.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

### No. 1844.

1. **Pleading ⬅236(4)—Allowance of amendment at close of trial within discretion of the court.**

   Allowing amendment of a declaration after close of the evidence, on the ground that it more clearly defined the issues tried, *held* within the discretion of the court.

2. **Frauds, statute of ⬅33(2)—Promise by wife to perform contract of husband on condition that promisee would not sue him, held an original promise, not within statute.**

   A promise by a wife to perform a contract of her husband in case she outlived him, on condition that the promisee would not bring an action against the husband *held* an original and not a collateral promise, and not within the statute.

3. **Frauds, statute of ⬅158(4)—Finding of sufficient consideration for wife's promise to perform her husband's contract warranted.**

   A jury *held* warranted in finding that a promise by a wife to perform a contract of her husband, who was then over 80 years old, on condition that the promisee would not bring suit against him during his life, which action might endanger his life, was made to subserve the wife's own pecuniary interest and based on sufficient consideration.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg.

Action at law by Virginia Lee Kiser against Minnie Evelyn Krise Knight. Judgment for plaintiff, and defendant brings error. Affirmed.

Armistead R. Long and Randolph Harrison, both of Lynchburg, Va. (S. H. Williams, of Lynchburg, Va., on the brief), for plaintiff in error.

Lowry F. Sater, of Columbus, Ohio (Vorys, Sater, Seymour & Pease, of Columbus, Ohio, on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. In the court below plaintiff in error was defendant and defendant in error plaintiff; they will be so designated

---

in this opinion. Facts which are either undisputed, or which, as we think, the jury were warranted in finding, may be summarized as follows:

Philip A. Krise, a retired banker of Lynchburg, Va., died February 1, 1917, in his eighty-fifth year, leaving an estate appraised at upwards of $840,000. He had been twice married. His first wife, Virginia Davis, died August 8, 1914, and in the following March he married the defendant, then about 38 years old. He left no children, his only child, a son by the first marriage, having died in 1903. His will, dated January 5, 1917, gives his entire estate to his second wife.

Mr. and Mrs. Krise had known the plaintiff, Virginia Lee Kiser, from her childhood, and she had been a frequent visitor in their home, sometimes for extended periods After their son's death in 1903, they urged her to come and live with them permanently. She was then giving instruction in art at a college in Dalton, Ga., and continued to do so for some months longer, for reasons which need not be recited, so that it was not until the summer of 1904 that she went to stay with the Krises. Her status in their household for the next two years appears to have been that of a welcome guest, as nothing was paid her for services or otherwise, and there was no definite arrangement for the future. In May, 1906, she determined to take up her art work again, and went to Europe with an artist friend. During her absence abroad she was frequently solicited by both Mr. and Mrs. Krise to come back to them, and they met her in New York on her arrival there in the following December. After a holiday visit to her mother in Columbus, Ohio, she returned to Lynchburg and made her home with the Krises until the death of Mrs. Krise in August, 1914. During this period she was treated as a daughter by this aged couple, and Mrs. Krise especially had for her from first to last the greatest affection.

The alleged promise of Mr. Krise to provide for her was made about the 1st of January, 1907, when in an interview sought by him he said, as she testifies:

"Virginia, madam and I have gone all the way to New York to bring you back to us to make your permanent home with us. Now, when I say this, I mean you should be to us the same as a daughter. You need not have any anxiety about the future. You are going to be just as our daughter, and we will provide for you as long as you live."

Thereafter, for the remaining lifetime of Mrs. Krise, plaintiff held the place of a daughter of the house and was maintained in a style befitting that position. All her expenses were paid, and she had besides a monthly allowance for spending and personal use. The three lived together in harmonious and intimate relations. They took a trip to Europe in the summer of 1907, and another in the summer of 1908, besides making visits to Florida and other resorts. In short, there appears to have been a pleasant family life, which lasted for some 7½ years, and in which the plaintiff at all times had a daughter's share.

Shortly after the death of his wife, Mr. Krise said to plaintiff, as she further testifies:

"Virginia, I don't want strangers to come here and take charge of the home and be with me. I haven't any one but you. I would like for things to go on as usual as near as they can."

And she promised to do what she could for him as long as she lived. So they kept on together, apparently in full accord, until he married defendant, rather suddenly as would seem, on the 13th of March, 1915. At his request, however, she remained in their home during the bridal trip, and in fact continued to reside there until some time in the following January.

Of what occurred during this time and later, according to plaintiff's testimony, it is enough to say that shortly after the bridal trip was over she told defendant about the promise of "Uncle Phil," as she called Mr. Krise, to provide for her as a daughter; that at defendant's suggestion she had a talk with Mr. Krise, in which she in effect asked him to do what he had promised; that he told her to "go out and look out for yourself," declined to make any provision for her and denied his liability to do so, saying, "But, Virginia, you haven't anything down in black and white to show for it;" that she reported this to defendant, who said, "Virginia, you cannot do it; I know how to battle with the world, you do not; you stay on and things have got to come your way;" that in January, 1916, she consulted a lawyer with the view of bringing suit against Mr. Krise; that he and defendant soon learned of this intention, and defendant said, "Virginia, why have you taken this case to a lawyer? Why are you bringing suit?" that plaintiff replied, "Johnny, you know that Uncle Phil has not carried out his promise to provide for me as a daughter as long as I lived, that I would have no need for any anxiety about the future," and added, "Now you are both saying that I must leave." Thereupon defendant said:

"After all, Virginia, you are mighty shrewd; you have engaged the best attorney in the state, and he has told Mr. Krise he is going to hand him papers, and if you allow these papers to be handed to Mr. Krise you will kill him. Now, if you don't allow these papers to be handed to Mr. Krise, of course, I don't know that I will outlive Mr. Krise; but, if I do, I promise to do for you what he has promised to do for you."

That, relying on this assurance, plaintiff stopped the intended suit before any papers were served, and took no further steps to enforce her claim during the lifetime of Mr. Krise. In August, 1917, plaintiff filed a claim against Mr. Krise's estate for $40,000. On the executor's refusal to pay, the claim was submitted to the commissioner of accounts, but subsequently withdrawn. In May, 1919, this suit was brought, and plaintiff had a verdict for $35,000.

[1] It is argued at length that the trial court erred in allowing the declaration to be amended after all the testimony had been introduced; but the argument is not convincing. It is fully refuted, in our judgment, by the statement of the learned judge of his reasons for granting the motion to amend. After pointing out "the ambiguity and confusion of thought which seemed to run through the declaration as it then stood," he said:

"This proposed amendment eliminates that ambiguity and confusion, as it seems to me. In the proposed amendment the plaintiff pins herself squarely to the proposition that she had with old Mr. Krise a contract, for the breach of which she would have been entitled to damages, had she sued him in his lifetime, and to the proposition that the defendant took upon herself, as an

original promise, the performance of said contract, and has not lived up to it. In view of the fact that the evidence of the plaintiff has been, to all practical intents, the same on this trial as on last July, and inasmuch as during the trial in July, the same as during this trial, plaintiff's counsel has all the time insisted on the right to recover damages for the breach of the alleged contract to provide for the plaintiff, I cannot see that the defendant has been taken by surprise, or that any injustice would be done the defendant in permitting to be filed an amendment that simply clarifies the contentions of the parties and pins the plaintiff down to one of two possible theories as the basis for recovery."

In the light of this explanation, if any were needed, it seems clear that the ruling complained of was a proper exercise of discretion, not here reviewable.

[2] The case as we see it turns on two questions which will be briefly considered: First, was defendant's promise to do for plaintiff what Mr. Krise had promised to do, which the jury found she made, void under the statute of frauds? It would be profitless to attempt discussion of a question which has long vexed the courts and to which we can add nothing of value. The Virginia authorities appear to be in some confusion, and we are unable to deduce from them a rule of governing application to the facts of the instant case. The true rule, we apprehend, is stated in the syllabus of Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 526, as follows:

"In determining whether an alleged promise is or is not a promise to answer for the debt of another, the following rules may be applied: (1) If the promisor is a stranger to the transaction, without interest in it, the obligations of the statute are to be strictly upheld; (2) but, if he has a personal, immediate, and pecuniary interest in a transaction in which a third party is the original obligor, the courts will give effect to the promise. The real character of a promise does not depend altogether upon form of expression, but largely upon the situation of the parties, and upon whether they understood it to be a collateral or direct promise."

And the opinion quotes with approval the following from Emerson v. Slater, 22 How. 28, 43 (16 L. Ed. 360):

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

"The thought is," says Mr. Justice Brewer in Davis v. Patrick, supra, "that there is a marked difference between a promise which, without any interest in the subject-matter of the promise in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the promisor."

These citations make comment unnecessary. We hold that the promise in question, as found by the jury, was an original and independent promise, made by defendant for her own benefit, and therefore not within the statute of frauds.

[3] The other question is whether the jury were warranted in finding that defendant made the promise mainly to subserve her own pecuniary interest, whether by benefit to herself or detriment to plain-

tiff, and not chiefly from a desire to shield her husband from annoyance. We are of opinion that this question should be answered in the affirmative. Defendant had a pecuniary interest in prolonging the life of her husband, not only for the value of his companionship and protection, but also for the benefits to be derived from his business ability. This pecuniary interest of a wife in her husband's life is recognized in numerous statutes relating to the subject of compensation for the death of a husband, and to the insurable interest of a wife in the life of her husband. In this case, also, as a jury might find, defendant apprehended the most serious consequences to her husband if plaintiff prosecuted her claim against him, and relief from risk and anxiety in that regard was a distinct and valuable consideration. Moreover, in accepting defendant's promise, plaintiff gave up the advantage of bringing a suit against Mr. Krise in his lifetime, since in such suit she would have been a competent witness in her own behalf, to prove the original promise made by him, and it is at least conceivable that his testimony might have aided her case. In short, we think there was sufficient evidence of a pecuniary consideration for the promise to sustain the verdict of the jury on that issue.

At the trial of the cause, and after all the evidence was in, certain questions were submitted to the jury, one after the other, and separate verdicts returned. The procedure appears somewhat unusual, but we do not perceive that it was prejudicial to defendant, or otherwise subject to valid objection. The other questions raised require no discussion.

Affirmed.