### CHOATE v. HOOGSTRAAT et al.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1901.)

No. 662.

1. PAYMENT—NECESSITY OF PLEADING.

Evidence of payment is only admissible under a plea of payment which should be specific as to the amount paid. An allegation in an answer that defendant turned over to plaintiffs certain lumber, of a stated value, which was accepted in settlement and in full accord and satisfaction of another's debt, is not a plea of payment which authorizes the defendant to go into a general accounting, and to prove the value of the lumber so turned over, in order to show that the debt had been paid independently of the alleged accord and satisfaction.

2. TRUST—CONTRACT CREATING—LIABILITY OF TRUSTEE.

Plaintiffs had manufactured a quantity of lumber for a lumber company under a contract that it should be delivered for shipment, as required by the company. Being behind in its payments, plaintiffs refused to make further deliveries without payment, and defendant entered into a contract by which he agreed to take charge of future deliveries, and pay the proceeds thereof to plaintiffs to apply on their claim. *Held*, that he occupied the position of a trustee under such agreement, and could not sell lumber delivered to him thereunder to a corporation of which he was president, and refuse to account for the proceeds on the ground that such corporation held some claim against plaintiffs or their debtor.

3. STATUTE OF FRAUDS—PROMISE TO ANSWER FOR DEBT OF ANOTHER—CONSIDERATION.

A letter written by defendant to plaintiffs, in which he agreed to become responsible for the payment of a sum due plaintiffs on certain

lumber sold by them to a third party if plaintiffs would deliver such lumber to the purchaser to enable him to fill his contracts, expresses a sufficient consideration to take it out of the statute of frauds of Wisconsin, which requires the writing to express a consideration.

**4. SAME—ORIGINAL OR COLLATERAL PROMISE.**

Plaintiffs had manufactured a quantity of lumber for a lumber company, a portion of which still remained in their possession. A part of the price of such portion had been paid, and, the remainder being past due, plaintiffs refused to make any further deliveries to the company for shipment until it was paid. Defendant, who was president of a corporation which held an unrecorded mortgage on the lumber, given by the company, and also a member of a firm which was indorser on notes of the company, stated to plaintiffs orally that, if they would deliver the lumber, he would "go good" for what the company was shipping until he gave them further notice. *Held*, that under the Wisconsin rule that, "where the party promising has for his object some benefit and advantage accruing to himself, and on that consideration makes the promise," a finding by the jury, under instructions properly stating such rule, that defendant's promise was an original promise, which bound him to payment of the value of the lumber delivered in reliance thereon, would not be disturbed.

**5. SAME—KNOWLEDGE OF PROMISE.**

It is not essential to the validity of a promise to pay, which is in fact an original promise, based on a consideration of benefit to the promisor, although the payment will incidentally discharge the debt of another, that the promisee should have knowledge of the real consideration when the promise is made and acted upon.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

On October 17, 1893, the defendants in error, who were the plaintiffs below, and the firm of Brown & Robbins, contracted with the Fair Lumber Company, a corporation, by which the former sold to the latter, and agreed to manufacture for it, the lumber of certain specified grades contained in and to be manufactured from pine timber upon certain specified lands in the state of Michigan, at prices stated in the contract, namely, $10.50 per 1,000 feet for the lumber; the prices for the shingle and lath depending upon the grade specified. Four dollars per 1,000 feet was to be paid under the contract on the 5th day of each month for all lumber put in pile during the previous month, and the remaining $6.50 per 1,000 feet was to be paid on the 5th day of each month for all the lumber loaded and shipped during the preceding month; the lath and shingle shipped during that period to be paid for in full at that date. The manufacture of the lumber was to be completed on or before April 1, 1894, and the Fair Lumber Company agreed to make final settlement for the lumber, lath, and shingle manufactured under the contract on November 1, 1894. Brown & Robbins, on October 25, 1894, transferred their interest in the contract to the defendants in error, who thus became the sole owners of the interest of the parties of the first part therein. The lumber was manufactured and piled, as provided, on or before April 1, 1894, and prior to November 1, 1894, the Fair Lumber Company had paid the $4 per 1,000 feet specified in the contract. The lumber was to be and was piled in the yards of Brown & Robbins, at Robbins, Mich., and was to be and to remain in their possession, and to be delivered upon demand of the Fair Lumber Company at its planing mill, or upon cars for shipment. The lumber was to be insured by the Fair Lumber Company, loss payable to the other parties to the contract as their interest should appear, and the policies delivered to them. The contract provided further: "If, when said stock is reduced to one million feet, or thereabouts, and the parties of the first part feel themselves insecure, they may demand security before said lumber is shipped; or, in case of financial failure of said second party, the lumber remaining unshipped shall revert to said first party as their own to the amount in full of their claim." On November 9, 1894, the Fair Lumber

Company was owing about $4,000 for lumber delivered to it in October preceding and about $27,600 for the lumber then in the possession of the defendants in error. The latter had forbidden further shipments of lumber without payment or security for the debt due them upon the lumber. Thereupon, on that day, the Fair Lumber Company settled for the balance due for the October shipments, partly in cash and partly by acceptances, which were afterwards paid; and with respect to the balance of $27,600 the president of the Fair Lumber Company at Robbins, Mich., suggested to the defendants in error that they should all go to Oshkosh, where Mr. Leander Choate, the plaintiff in error, resided, and make some arrangement by which shipments would be permitted, and the delivery of the lumber continued upon Mr. Choate's becoming security for the Fair Lumber Company. The parties accordingly proceeded to Oshkosh, and met with Mr. Choate. The latter was president of the Oshkosh Log & Lumber Company, which was a creditor of the Fair Lumber Company to the amount of from ten to twelve thousand dollars. He was also a member of the firm of Bray & Choate, which firm was indorser upon the paper of the Fair Lumber Company to the amount of from six to seven thousand dollars. The Oshkosh Log & Lumber Company had also a bill of sale, never placed upon file, of the factory plank in the stock manufactured by the defendants in error. On September 13, 1894, the Fair Lumber Company had sold to the Williamson & Libbey Lumber Company, of Oshkosh, all of the factory plank in this stock of lumber, of which fact Choate had been informed prior to the interview of November 9, 1894. At this interview Mr. Choate declined to go security for the debt of the Fair Lumber Company, stating that Fair had misrepresented his indebtedness, and that the lumber company was owing him enough. Then, according to the testimony for the defendants in error, they said to him that, if he would not go security, they would stop Fair from shipping, to which he replied, "If you do, you will bust the poor fellow," and one of the defendants in error answered, "If we don't stop him, he will bust us," and that Mr. Choate replied that he was in a hurry to attend a funeral; that he had not made up his mind just then about going on this paper, but said, "I will write you, and until that time I will go good for what they are shipping." This part of the conversation was denied by Mr. Choate. The defendants in error claim that they, upon the faith of Mr. Choate's promise, permitted the Fair Lumber Company to ship the lumber until the 13th day of November, 1894, the date of a letter received from Mr. Choate. The amount of lumber so shipped, with interest, amounted to $1,922.72, part of the verdict in this case. Mr. Choate testified, somewhat obscurely, that by the bill of sale, which was not produced, the Fair Lumber Company turned over to the Oshkosh Log & Lumber Company, of which he was president, the factory plank in the stock manufactured by the defendants in error; that he could not say that his company received all the proceeds of the factory plank shipped during November, but might have got a little something. On November 13, 1894, Mr. Choate wrote to the defendants in error the following letter:

"Gentlemen: I have just been talking with Mr. Fair, but have come to no settlement yet. I told him I should write you to that effect. He wanted me to write you that, if you would let him ship what few orders he had, he would stop shipping. It would hurt his trade if it should be reported that he had been stopped from shipping. I will become responsible for the $6.50, the amount of your claim on factory plank.

"Yours sincerely,                                Leander Choate."

The defendants in error claimed that they accepted the written agreement, and permitted shipments between the 14th and the 20th of November to the amount, with interest, of $839.08; also part of the verdict. On the 20th day of November an agreement in writing was perfected between all the parties, by which Fair agreed to transfer his stock and procure the election of Choate and Daly as directors of the Fair Lumber Company, and to place the general management of its business in the hands of Mr. Choate, who agreed to take the management and turn over to the defendants in error all moneys arising from the sale of the stock at Robbins as fast as received by him, until their

claim against the Fair Lumber Company was paid in full, if the moneys received from the sale of the stock should prove sufficient therefor. The defendants in error agreed to waive the strict terms of the contract of the 17th of October, 1893, and agreed that Mr. Choate should have the necessary time to realize from the stock of lumber, and that the time of the payment of the amount due them November 1, 1894, under the contract, should be extended, and payment should be made monthly for all lumber disposed of during the previous month, and the full amount of receipts for the lumber should go to them until their debt was satisfied. Under this latter arrangement Mr. Choate remitted to the defendants in error from time to time the proceeds of sales and shipments, except the sum of $243.59, for lumber sold by him to the Oshkosh Log & Lumber Company, claiming that that company refused to pay the amount under some claim of offset against the Fair Lumber Company, or the defendants in error. In May, 1895, Mr. Choate declined to act further under that contract, and turned over to the defendants in error the lumber then on hand. They received it from Choate, and afterwards sold it. The suit was brought to recover (1) upon the alleged oral promise of Choate of November 9, 1894, for the property claimed to have been delivered on the faith of that promise; (2) upon the written promise of November 13, 1894, for the property claimed to have been delivered under that promise; (3) to recover the sum of $243.59 under the written contract of November 20, 1894. The defendant below denied (1) the alleged promise of November 9, 1894, and also charged that such alleged agreement was void under the statute of frauds; (2) nonacceptance by the defendants in error of the promise contained in the letter of November 13, 1894, and a denial that it was ever acted upon, or that the writing expressed any consideration as required by the statute of frauds; (3) as to the sum of $243.59 for lumber sold by him to the Oshkosh Log & Lumber Company, he denies that he had received that amount from the company, and charges that the defendants in error here and the Fair Lumber Company were both indebted to the Oshkosh Log & Lumber Company in a sum in excess of such bill of lumber, and that that company retained the sum, and refused to pay the same. He lastly alleges "that after the making of the agreement of November 20, 1894, and about May 18, 1895, and in final settlement thereof, he turned back to the said plaintiffs, and they accepted, about $19,232.70 worth of lumber, then in the yards of the plaintiffs, in settlement and payment of their claim and demand against the Fair Lumber Company, and that the said lumber was by them accepted and retained by the said plaintiffs, and was in settlement and payment of all claims and demands due from the Fair Lumber Company to them; and that the said lumber was then and there reasonably worth the sum of $19,232.70, which was more than there was then due or owing on the contract between the plaintiffs and the Fair Lumber Company, and that the said contract and all demands and claims arising thereunder were thereby duly settled, and accord and satisfaction thereof had."

At the trial, evidence was taken pro and con upon the subject of the making of the alleged oral promise of November 9, 1894, of the acceptance of the written promise of November 13, 1894, and touching the transactions under the contract of November 20, 1894. The defendant sought to show the total shipments of lumber from the beginning of shipments under the contract down to and including the turning over of the balance of the lumber on May 18, 1895, which included shipments made by the defendant Choate, for the purpose of proving that the debt of the Fair Lumber Company to the defendants in error had been fully paid. This evidence was excluded by the court, and its ruling is the subject of an exception. The court charged the jury with respect to the item of $243.59 that it represented lumber sold by Mr. Choate under the contract of November 20, 1894, to the Oshkosh Log & Lumber Company, of which he (Mr. Choate) was president, and for which amount he had failed to respond to the plaintiffs below, alleging that the Oshkosh Log & Lumber Company refused to pay him that amount under claim of offset against the plaintiffs below, or the Fair Lumber Company; that Mr. Choate, with reference to that transaction, occupied the position of a trustee to the plaintiffs and that he had no right to withhold that amount. With reference to the alleged verbal promise of November 9th the court

charged as follows: "It is the law of this state, derived from ancient law in the statute of frauds, as it is called, that a promise made to answer for the debt, default, or miscarriage of another party is void, cannot be enforced, except it conform to the statute, be in writing, and express a consideration. Therefore this promise, or alleged promise, made on the 9th of November, gave the plaintiffs no right, if it was a mere guaranty,—a mere promise to answer for the debt of another. You will ascertain, gentlemen, whether any such promise was made in fact. Mr. Hoogstraat and Mr. Joyce testified that after their meeting in the office of the Fair Lumber Company, and while they were leaving the building, on some preliminary remarks by them that they would have to stop shipments, Mr. Choate said we would 'bust the boys,' or 'bust the Fair Lumber Company,' and they said, 'If we do not do it, it will bust us;' and that Mr. Choate then said, in substance, 'I will go good for the lumber they are shipping if you will let the shipments go on.' This was denied by the defendant. The plaintiffs must first establish by the preponderance of the testimony that such a promise was made. I think the only additional testimony was that of the bookkeeper, who was in the office only, so that substantially upon that point it is the testimony of Mr. Hoogstraat and Mr. Joyce on the one side and Mr. Choate on the other. Now the fact that there are two witnesses on the one side and but one on the other is not of itself necessarily the preponderance of the testimony. You have the right to consider the appearance of the witnesses, the reasonableness of the story, and all the circumstances, and determine for yourselves on the testimony which is the more credible testimony; and wherever you find the preponderance to be, you should determine accordingly by your verdict. If you find that the promise was not made, then, of course, you have nothing further to do with that question, and reject it from consideration. But, if you find the promise was made, then you must ascertain whether it is a promise within the prohibition of this statute of frauds; whether it is a promise to guaranty the amount,—to answer for the debt or default of another; and, if it is clearly such a promise, then it is of no effect, and entitled to no consideration. You are, however, to consider all the circumstances in this case for the purpose of ascertaining whether or not it is such a promise, for you are further instructed, gentlemen, that if you find from the preponderance of the evidence that the plaintiffs intended at the time of that promise on the 9th of November to prevent the Fair Lumber Company from shipping out lumber, and so informed the defendant, and then, in order to induce the plaintiffs to permit such shipments, and by reason of an interest in having the shipments go on, he promised to 'go good' for what the Fair Lumber Company were shipping; and you further believe that the plaintiffs understood the promise to be so intended and made because of an interest, and not gratuitously, and that the plaintiffs, relying on such promise, took no further action to prevent such shipments, but permitted the same to go on,—such promise by the defendant, under the undisputed facts in this case of his relations to the Oshkosh Log & Lumber Company and the Fair Lumber Company, would be an original undertaking on his part, and valid in the law as an original promise, and not a promise to answer for the debt, default, or miscarriage of another." The court, upon this question, further instructed the jury: "The fact that Mr. Choate had an interest in the lumber, or in the dealings of the Fair Lumber Company, through a bill of sale or chattel mortgage, whether it was actually put to use or not, and the fact that he was interested as a creditor to a large amount, would make a foundation for such a promise as an original undertaking; but these facts alone would not make a promise good, because it must be understood by these plaintiffs in taking the promise that it was so made because of an interest he had. They must understand it is not made simply out of a desire to help the Fair Lumber Company. If so made, or if so understood by the parties, that Mr. Choate had an actual interest in obtaining the shipments to be made, and that he made the promise on the strength of that, and for the purpose of causing the shipments to be made, then it is an original undertaking, and does not come within the statute. * * * That is the test upon which you will determine whether it is an original undertaking or a mere promise to answer for the debt of another." With respect to the claim under the letter of

November 13th and its acceptance, the court charged the jury as follows: "You are instructed that this letter contained a sufficient statement of the consideration within the requirements of law to make it a valid promise; and if you find that the plaintiffs intended to accept and did accept the promise contained in this letter by their failure to forbid shipments in reliance thereon, and that the defendant understood and had reason to understand from the conduct of the plaintiffs that such promise was so accepted and acted upon by them for the shipments of factory plank from November 14th to November 20th, inclusive, you should find for the plaintiffs for the amount so shipped. In determining this question of acceptance, you should take into consideration the conduct of the parties throughout. You should take into consideration, for such value as you may find it to afford, the fact that the plaintiffs, immediately after the receipt of the letter, or soon after the receipt of the letter, went with their attorney to see Mr. Fair, the president of the Fair Lumber Company, and followed that up by going to Oshkosh, and there entered into the agreement of November 20th, by which the defendant was thereafter to take charge of the business of the Fair Lumber Company. Consider all those circumstances in connection with the situation of the plaintiffs; that meantime they had made no change in their conduct in relation to the shipments of lumber, but permitted the shipments to go on; and ascertain what was the real understanding of the parties,—whether the letter of November 13th was accepted or not, and so understood by both parties. Unless it was accepted, and so understood, or unless the parties had reason to understand that it was accepted, then it is of no avail to the plaintiffs in this case. There must be an acceptance, as well as a making of the promise." To reverse a verdict in favor of the plaintiffs below, this writ of error is sued out, the questions considered being properly assigned for error.

A. E. Thompson, for plaintiff in error.

W. H. Timlin, for defendants in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement, delivered the opinion of the court.

We are of opinion that the court below properly excluded the evidence offered for the purpose of showing that the debt of the Fair Lumber Company to the defendants in error had been fully paid, and this because no plea of payment had been made. The plea was one of accord and satisfaction,—that the defendants in error in May, 1895, in final settlement of the agreement of November 20, 1894, received from the plaintiff in error and accepted $19,232.70 worth of lumber in settlement and payment of their claim and demand against the Fair Lumber Company. The evidence failed to sustain this plea, the evidence of Mr. Choate showing no accord and satisfaction, but that the lumber remaining unsold in May, 1895, was merely turned over to the defendants in error; nothing being said about price, or of its being in satisfaction of any claim. The attempt was made by an estimate of the value of the lumber so turned over and by means of a general accounting to show that the debt of the Fair Lumber Company to the defendants in error had been paid, but, in the absence of any plea to that effect, the evidence was clearly improper. Such a plea should be specific as to the amount paid. Shipman v. State, 43 Wis. 381. Here the receiving of the lumber from Choate, the trustee, because he refused to further continue in the sale of it, with no agreement as to its value, or the application of its value to the debt of the Fair Lumber Company, did not make

the value of it payment to that amount upon the debt of the Fair Lumber Company. Only when the defendants in error should dispose of that lumber could they be charged therewith, and then only the sale being fair, for the amount received. So, also, we think the court correct in charging the jury that the plaintiff in error was liable for the sum of $243.59, the lumber sold to the Oshkosh Log & Lumber Company, of which he was president. This amount had not been paid to Mr. Choate under some claim of the lumber company, as he stated, that it had some offset or defense as against the defendants in error or the Fair Lumber Company. The lumber was placed in the possession of Mr. Choate as trustee for the defendants in error. He obligated himself to turn over to them the proceeds. He was a trustee, and could not sell lumber to a company of which he was president, and assert any sort of a claim on the part of that company against the defendants in error or the Fair Lumber Company.

With regard to the question of the acceptance of the agreement of November 13, 1894, we think the matter was properly and fairly submitted to the jury. The question of acceptance is one of fact to be determined in the light of the surrounding circumstances; and, having been properly submitted, we are concluded by the verdict of the jury. We cannot doubt that the agreement expresses a consideration. It is, in legal effect, that the plaintiff in error would become responsible for the $6.50 per 1,000 feet, the amount of the claim of the defendants in error on factory plank, if they would allow Mr. Fair to ship lumber to fill the orders he then had. Assuming this letter to be a collateral agreement to answer for the debt of another, we think there is a sufficient statement of consideration to meet the requirements of the statute of frauds.

The question of most difficulty in this case arises upon the oral promise of November 9, 1894, found by the jury to have been made, to the effect that, if the defendants in error would permit the Fair Lumber Company to continue shipping, he (Choate) would, until he wrote them, as he promised to do, "go good for what they are shipping." The validity of this agreement depends upon the question whether it is a collateral agreement to answer for the debt of another, or whether it is an original agreement upon a new and sufficient consideration; the extinguishment in whole or in part of the original debt by the performance of the new agreement being merely an incident. Much subtlety has been indulged by the courts from an early date in the construction placed upon the statute of frauds. It would be difficult, if not impossible, to reconcile the various decisions of the courts. It is, perhaps, unfortunate that we have gotten away from the strict letter of the statute. We are glad to note the present tendency of the courts to get more in harmony with the spirit and the purpose of the law. It would serve no useful purpose to enter upon a review of the many and possibly discordant decisions. It is sufficient to state the rule, as we understand it to be, now held by the supreme court of the state of Wisconsin, whose law we are considering, and of other states which are in accord with that holding, and of the supreme court of the United States. In Hoile v.

Bailey, 58 Wis. 434, 17 N. W. 322, and in Weisel v. Spence, 59 Wis. 301, 18 N. W. 165, the court reviews the previous decisions in that state, and furnishes, as a test to determine whether a promise is original or collateral, the following rule: "In all these cases founded on a new and original consideration of benefit to the defendant or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery;" and "where the party promising has for his object some benefit and advantage accruing to himself, and on that consideration makes the promise, this distinguishes the case of an original undertaking from one within the statute." The latter rule is in substance declared by the supreme court of Massachusetts in Curtis v. Brown, 5 Cush. 491. "It is not enough," says the court, "that the plaintiff has relinquished an advantage or given up a lien in consequence of the defendant's promise, if that advantage has not also inured to the benefit of the defendant, so as, in effect, to make it a purchase by the defendant of the plaintiff. * * * Where the plaintiff, in consideration of the promise, has relinquished some lien, benefit, or advantage for securing or recovering his debt, and where, by means of such relinquishment, the same interest or advantage has inured to the benefit of the defendant," an oral promise is binding. "In such cases, although the result is that the payment of the debt of the third person is effected, it is so incidentally and indirectly; and the substance of the contract is the purchase by the defendant of the plaintiff of the lien, right, or benefit in question." In White v. Rintoul, 108 N. Y. 222, 15 N. E. 318, the court states that the rule in Leonard v. Vredenburgh, 8 Johns. 29, that a new and original consideration moving between parties to the new promise took it out of the statute, was "dangerously broad, and capable of grave misapprehension," and that the rule of the state of New York now was that, "when the primary debt subsists, and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." In Emerson v. Slater, 22 How. 28, 16 L. Ed. 360, the supreme court of the United States declared that, "whenever the main purpose and object of the promise is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." And in Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, the court observes that "there is a marked difference between a promise which, without any interest in the subject-matter of the promise in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of third party, is also and mainly for the benefit of the promisor." We need not inquire whether these cases in the supreme court of the United States are fully in accord

with the advanced rule declared by the supreme court of Wisconsin and Massachusetts and the court of appeals of the state of New York; nor need we suggest that logically and rationally damage to the promisee should be as effective as benefit to the promisor in determining whether a promise is original or collateral. It is enough to say that the question was submitted to the jury by the court below under the more advanced rule referred to, and certainly the plaintiff in error has no ground for complaint. The court distinctly told the jury that the facts that Choate had an interest in the lumber through a bill of sale, and that he was interested as a creditor, would not alone make his promise good, "because it must be understood by these plaintiffs in taking the promise that it was so made because of an interest he had. They must understand that it is not made simply out of a desire to help the Fair Lumber Company. If so made, or if so understood by the parties, that Mr. Choate had an actual interest in obtaining the shipments to be made, and that he made the promise on the strength of that, and for the purpose of causing the shipments to be made, then it is an original undertaking, and does not come within the statute." We are inclined to the opinion that the court went beyond the rule in declaring that the promisee must understand that the promise was not made simply out of a desire to help the debtor. We read no such requirement in the rule as stated. The fact must exist that the promise is made with a view to benefit the promisor, and because of his interest in the subject-matter, but we do not find that it is essential that the promisee should know of the interest and object of the promisor if the interest and purpose in fact existed; but this error—if error there was—was favorable to the plaintiff in error, and he cannot be heard to complain of it.

We cannot say, as a matter of law, that this promise was collateral. The situation was this: The defendants in error were in possession of the stock of lumber on account of which the Fair Lumber Company had paid $4.50 per 1,000 feet, and owed under their contract $6.50 per 1,000 feet in addition. That debt was due. The defendants in error could not be compelled to part with possession of that property until the whole debt was discharged, and they had refused to make delivery because of nonpayment of the debt. At this time the company of which Mr. Choate was president had a bill of sale of this lumber from the Fair Lumber Company. It had not been placed on record, and therefore was not effective as against a third party, but it was potential as between the Fair Lumber Company and Mr. Choate and his lumber company. He or his company was the legal owner of this lumber, subject to the claim and possessory lien of the defendants in error, and, as against the Fair Lumber Company, had the legal title to the lumber, and the right of possession for the purpose for which it was transferred. Notwithstanding the lumber had been sold to the Williamson & Libbey Company, and the bill of sale to Mr. Choate's company was ineffectual as against that purchase, still, as against the Fair Lumber Company, it gave Mr. Choate's company the right to the possession of the proceeds of the sale. Mr. Choate was also a member of the firm of Bray &

105 F.—46

Choate, which firm was indorser to the amount of $7,000 on paper of the Fair Lumber Company. Under these circumstances he orally agreed with the defendants in error that, if they would permit shipments of the lumber by the Fair Lumber Company, and waive their lien upon or possessory right to that lumber, he would, until such time as he should write the defendants of his final conclusion, "go good for what they are shipping." It will be observed that he did not promise to pay the debt of the Fair Lumber Company, amounting to $27,600; nor did he promise to pay only the amount of $6.50 per 1,000 feet for such lumber as should be shipped under the oral agreement. He did promise to "go good" for such lumber as should be shipped under that agreement, and that promise we understand to be an agreement to be responsible to and to pay the defendants in error the value of such lumber as they should permit to be shipped under that agreement, and that irrespective of the debt of the Fair Lumber Company upon that quantum of lumber, and irrespective of the total indebtedness. It is at least doubtful whether this promise, if so properly construed, is not an original promise; whether it had relation to the debt of the Fair Lumber Company to the defendants in error; and whether it was not a promise for the payment of the value of the lumber shipped, without reference to any debt from another. Chandler v. Davidson, 6 Blackf. 367; Lessel v. Zillmer, 105 Wis. 334, 81 N. W. 403. Nor are we able to say, as matter of law, under the circumstances stated, and in view of Mr. Choate's evidence with regard to the receipt of the proceeds of the lumber by his company, that his promise was not made upon "a new consideration moving to the promisor, and beneficial to him," and that his "leading object" was not to benefit himself. These were questions proper to be submitted to the jury, and were so submitted under instructions most beneficial to the plaintiff in error, and we cannot disturb the verdict. The judgment is affirmed.