## MAXEY v. RIDEOUT.

(Circuit Court, E. D. Wisconsin. October 11, 1909.)

1. INDEMNITY (§ 11*)—ACTION AGAINST INDEMNITOR—ACCRUAL.

Plaintiff, defendant, and another started the promotion of a railroad company, the scheme contemplating a transfer to it of certain timber land belonging to plaintiff, to be paid for in stock, etc.; it being agreed that defendant, in consideration of $100,000 in stock of the railway, should furnish such money as might be necessary, over a loan to be obtained, to enable the railroad company to complete its organization and to make the necessary payments on plaintiff's land, etc., and for personal expenses, the sums advanced to be returned on completion of the organization of the company. The corporation was formed prior to the time contemplated in the original scheme, and plaintiff's land was transferred to it in return for certain notes of the railroad company, one of which, for $5,000, plaintiff indorsed to a bank of which defendant was president to secure money to pay off taxes and other liens on the land. Defendant was no party to this note, and on its maturity refused, under the contract, to protect the same, whereupon judgment was recovered by the bank thereon against plaintiff. *Held*, that defendant's contract to advance money for the promotion of the corporation was not a contract to indemnify plaintiff against "liability," but a contract to create an indemnity fund for the benefit of plaintiff and other vendors; and hence plaintiff could not maintain an action on the contract before he had been compelled to satisfy the judgment on the note.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 21–25; Dec. Dig. § 11.*]

2. FRAUDS, STATUTE OF (§ 33*)—DEBT OF ANOTHER—CONSIDERATION.

Where defendant, one of the promoters of a corporation, was interested in the success of the scheme to the extent of $100,000 of the paid-up stock to which he was entitled, there was a sufficient consideration for his parol agreement that he and the corporation would pay or secure to plaintiff a sufficient amount of cash out of the purchase price of plaintiff's timber lands, which plaintiff had agreed to transfer to the corporation, to enable plaintiff to discharge claims for taxes, etc., to perfect his title.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53; Dec. Dig. § 33.*

Sufficiency of expression of consideration in memorandum within statute, see note to Choate v. Hoogstraat, 46 C. C. A. 183.]

3. FRAUDS, STATUTE OF (§ 33*)—ORIGINAL UNDERTAKING.

An oral agreement by one of the promoters of a corporation to secure to plaintiff a sufficient amount of cash out of the purchase price of plaintiff's timber lands, which were to be conveyed to the corporation, to enable plaintiff to discharge liens thereon to perfect his title, was an original undertaking, not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53; Dec. Dig. § 33.*]

Action by John O. Maxey against Walton K. Rideout. On plea in abatement. Overruled.

The facts, as disclosed by the complaint, are briefly as follows:

That the plaintiff was the owner of a tract of about 7,900 acres of timber land, which was contiguous to a certain old and abandoned railroad right of way known as the "Huron Bay Railroad." That the plaintiff and defendant,

together with one M. C. Phillips, formed a plan to organize and promote, for their personal profit, a railway company which was to acquire said old railway right of way and certain timber lands adjacent thereto. Pursuant to said plan, a company was organized under the laws of Michigan, to be known as the "Lake Superior Southern Railway Company." Phillips was elected president, the defendant was elected treasurer, and the plaintiff became the secretary, and they controlled the majority of the stock. The said railway company controlled rights in such old grade and right of way, with docks and terminal facilities on Huron Bay, in Lake Superior. That, according to the plan of said promoters, said company was to purchase certain tracts of timber land in Michigan, and among the rest said tract of 7,900 acres belonging to the plaintiff. That it was the plan of said promoters to have said railway company issue bonds to be secured by a mortgage covering such property rights. That according to such plan said railway company was to pay for said land by giving its promissory notes for the amount of the purchase price. That said railway company had no financial responsibility whatever, and no money with which to buy said timber land or to pay the notes as they matured. That said company secured a loan from the Citizens' Trust Company of Milwaukee for $75,000 to pay for a portion of said tracts of timber land. That for the purpose of securing further funds, and in order to induce the plaintiff to deed his tract of land to the company, said promoters entered into a certain agreement in writing on the 21st day of September 1905.

"It is mutually agreed between us that the money or bonds arising from the prorating of the same according to the annexed agreement shall be divided by three, each party receiving one-third of the amount thereof; also, that W. K. Rideout shall receive $100,000 in stock of the proposed railway company, fully paid, in consideration for which said W. K. Rideout is to furnish such moneys as may, over and above the loan made and obtained from the Citizens' Trust Company, of Milwaukee, of $75,000, or shall be required to enable us and the railway company to complete its organization, make the necessary payments on the Maxey lands, of about 7,000 acres, the Read & Bronson and the Reed & Co. lands, including such personal expenses as may be necessary of the respective parties in connection therewith, provided said sums, of money shall be returned to said W. K. Rideout upon the completion of the organization of the company.

"M. C. Phillips,
"John O. Maxey,
"W. K. Rideout."

That the agreement therein referred to as the "annexed agreement" related to the organization of said railroad and to the division among said Rideout, Phillips, and Maxey of the money or profit which they were to receive and share personally out of the sale of the obligations of said Lake Superior Southern Railway Company. That the plaintiff, in reliance on the terms of said agreement, sold and conveyed to the railway company by warranty deed his tract of timber for $79,205, and received therefor from said railway company its certain promissory notes for that amount, payable to the plaintiff, among which was a certain note for $5,000, dated on the 21st of September, 1905, payable to the order of said plaintiff on the 2d of July, 1906, with interest at 6 per cent., and that without such agreement on the part of Rideout to advance and furnish such money the plaintiff would not otherwise have sold nor conveyed said land. That at the time of such sale and conveyance by the plaintiff of such timber land to said railway company there were certain outstanding claims against said lands for the taxes and other liens, which the plaintiff was obligated to pay and discharge in order to perfect his title to the lands; and that about the sum of $5,000 was necessary for that purpose. That it was then and there agreed between said plaintiff and defendant that the defendant and said railway company should pay or secure and furnish to said plaintiff a sufficient amount in cash to enable the plaintiff to pay and discharge said claim. That on the 23d day of September, 1905, for the purpose of securing said $5,000 in cash for the purpose aforesaid, said railway company's note of $5,000 so given by the railway company as part payment of the purchase price of his timber land was indorsed by the plaintiff as an accommodation to said defendant Rideout, and said defendant thereupon caused said note

to be discounted at the National Union Bank of Oshkosh, Wis., of which bank said Rideout was then the president. That said note was discounted by said bank, and became the property of the bank, with full knowledge on the part of the bank of the agreement among said promoters hereinabove set out. That the proceeds of such discount were in fact used in clearing the title to the plaintiff's land. That upon the 2d day of July, 1902, at the maturity of said note for $5,000, such note, not being paid, was protested by the bank for nonpayment, and that the defendant neglected and refused to take care of said note or to furnish the money necessary to retire the same. That said bank brought suit upon the note in the circuit court of Winnebago county, Wis., and on the 21st of January, 1908, obtained judgment thereon against the plaintiff in the sum of $5,745.50. That said bank thereupon brought suit in the Circuit Court of the United States for the Western District of Michigan, based upon such judgment so obtained in said circuit court for the county of Winnebago, and a judgment was obtained in said Circuit Court of the United States on the 24th day of September, 1908, in favor of said bank and against this plaintiff, for the sum of $5,931.90. Plaintiff further alleges he is financially responsible, and is possessed of property and lands out of which said judgment can be satisfied, and that said National Union Bank of Oshkosh is now pressing such judgment for collection, and threatens to enforce the same by levying a writ upon the plaintiff's lands. The plaintiff therefore demands judgment against the defendant for the sum of $5,931.90, with interest thereon from the 24th day of September, 1908, together with costs, etc.

Hill & Smith and William P. Belden, for plaintiff.
Barbers & Beglinger, for defendant.

QUARLES, District Judge (after stating the facts as above). The theory upon which the plea of abatement rests is that the action has been prematurely brought, that the promise of the defendant was collateral and did not amount to a guarantee against liability, and that no recovery can be had until the judgment or some part thereof has been paid by the plaintiff. It was conceded in the argument by plaintiff's counsel that, if the defendant by virtue of the written agreement became a surety, the plea should be sustained. But it was vigorously contended that this was an original engagement on the part of Rideout, based upon a good consideration, which rendered him liable to suit when he failed to comply with his written agreement to furnish the necessary means to enable the railway company to purchase the plaintiff's lands. The sole question, therefore, to be determined is: What was the legal relationship between the plaintiff and the defendant, growing out of the written agreement upon which this action is brought?

It is important at the outset to ascertain when this written agreement was made. It bears no date. The complaint alleges that it was entered into September 21, 1905. This is an evident mistake, because the contract must have been made before the organization of the corporation. Upon the argument counsel for both parties agreed that the true date of this preliminary contract was August 16, 1905, more than a month before the organization. At this early date the scheme of the promoters seems to have been nebulous. Their anxiety to divide the profits of the enterprise amongst themselves seemed uppermost. As there were no assets in sight, some ready money was necessary to defray expenses and to acquire certain tracts of land, which might be capitalized and which might furnish a lawful basis for a bond issue which was relied upon to reimburse all advancements made by the

promoters. The defendant's promise to contribute to this fund must be construed with reference to those facts. It was explicitly stated in the memorandum that all such money advanced should be repaid to the defendant upon the organization of the corporation. It was further provided that such primary fund was to be expended by "us" (the promoters), or by the corporation. Whether under any construction of this written agreement defendant could be called upon to make any advancements of funds after the corporation was organized is a question going to the merits, and not raised by the plea under consideration.

It will be observed that the written agreement does not create any personal obligation between the plaintiff and the defendant, but is essentially an agreement on the part of the defendant to advance funds to the embryo railway company as a preliminary step to organization. It further appears that about the 21st of September, 1905, the railway company was organized under the Michigan statute, and thereupon executed certain promissory notes to the plaintiff, aggregating $7,900, in exchange for his warranty deed to a certain tract of timber land. This would seem to indicate change in the programme. Instead of a preliminary purchase by the promoters, the railway company was first organized, and purchases made in its name, and promissory notes given by it to the vendors. It appears that there were certain outstanding liens upon this tract of land, which plaintiff by his warranty deed obligated himself to remove, so as to furnish a clear title. In order to perfect this title the plaintiff took one of the promissory notes received by him from the railway company, and indorsed the same in blank, and had the same discounted at the National Union Bank of Oshkosh, of which bank defendant was president. The proceeds of such discount were applied to the extinguishment of such liens on the plaintiff's lands. Plaintiff avers that he indorsed this note as an accommodation for the defendant; but, as the indorsement was made without condition or qualification, it is difficult to understand the meaning of this averment. Certain it is that the defendant was no party to the note. The theory of the complaint is that these notes were taken by the plaintiff, and the $5,000 note was discounted by him upon the strength of defendant's engagement in the written contract to advance a sufficient sum to enable the railway company to pay for the lands, etc.

Conceding for the purposes of the argument that the agreement of the defendant survived the organization of the railway company and was still available when the plaintiff discounted his $5,000 note, upon the legal theory that the plaintiff may rely upon the promise made by the defendant to the railway company if made for his benefit, still I am constrained to hold that the entire scheme evidenced by the written contract was to create an indemnity fund for the benefit of the vendors, and that it cannot be said to be an indemnity against liability. Defendant has made no promise to pay this $5,000 note, and his written agreement has no reference to the discount of the same or the extinguishment of liens upon the real estate. Plaintiff accepted the railway company as the primary obligor, and can only resort to the contract when he shall have sustained some damages. He has not paid

the judgment, or any part thereof, and therefore the action is prematurely brought. The Supreme Court of Wisconsin has laid down the law on this subject in the following cases: Thompson v. Taylor, 30 Wis. 68; Selleck v. Griswold, 57 Wis. 291, 15 N. W. 151; Barth v. Graf, 101 Wis. 28, 76 N. W. 1100; Lyle v. McCormick Harvesting Mach. Co., 108 Wis. 81, 84 N. W. 18, 51 L. R. A. 906. It is unnecessary to refer to the numerous decisions of other states where the same definition is adhered to.

Under this construction of the complaint, the plea in abatement should be sustained. There is, however, an averment in the complaint which, under one construction, would give a different complexion to the legal question raised by the plea:

"That it was then and there agreed between said plaintiff and said defendant Rideout that he and said railway company should pay or secure and furnish to said plaintiff a sufficient amount in cash out of said purchase price of $79,205 to enable the plaintiff to pay and discharge said claim and thus perfect his title."

This averment may be construed to set up a distinct and separate oral promise on the part of the defendant, made subsequent to the written agreement. From the brief and argument of plaintiff's counsel we are led to believe that the above averment was intended as the plaintiff's interpretation of the written agreement. In such brief plaintiff's counsel announce "that this suit is based squarely upon an express written contract in the nature of an original obligation," and no suggestion is anywhere made that the plaintiff relies upon a subsequent oral promise. The court, however, is not concluded by the construction of counsel, but must impose its own interpretation upon the averments of the complaint. If we are to read this averment of the complaint as setting up a later parol engagement by the defendant to furnish the plaintiff with the necessary means to perfect his title, such obligation, although by parol, may be original in nature, although the railway company was primarily liable. The interest that defendant had in the success of the scheme, and which involved for him $100,000 of paid-up stock, may furnish a sufficient consideration, in which event the case would not fall within the statute of frauds, and should be ruled by Emerson v. Slater, 22 How. 28, 16 L. Ed. 360, Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, and Choate v. Hoogstraat, 105 Fed. 713, 46 C. C. A. 174.

Under these circumstances, the court being in doubt as to the true construction and interpretation of the complaint, the better course would seem to be to overrule the plea and allow the parties to be heard upon the merits, so that the court may have a clearer understanding of the facts than can be gathered from ambiguous averments of the pleadings.

For these reasons, the plea in abatement will be overruled.