## KELSEY v. MUNSON et al.

### (Circuit Court of Appeals, Eighth Circuit. August 13, 1912.)

### No. 3,498.

1. BANKRUPTCY (§ 333*)—PROOF OF CLAIMS—EFFECT OF INFORMALITY.

All the formalities required in ordinary pleadings do not apply to proofs in bankruptcy, and failure to file a written instrument upon which a claim is founded, pursuant to Bankr. Act July 1, 1898, c. 541, § 57b, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), does not raise a presumption against the existence of the writing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 333.*]

2. FRAUDS, STATUTE OF (§ 23*)—"PROMISE TO ANSWER FOR THE DEBT OF ANOTHER"—ORIGINAL OR COLLATERAL PROMISE.

Where a partnership, to enable one of the partners to borrow the money necessary to commence business, agreed that if the contemplated sureties would sign the note it should become and be a partnership debt, and the sureties signed and the firm obtained the money, its agreement to pay the debt was direct, and not collateral, and not within Rev. St. Colo. 1908, § 2666, requiring every special "promise to answer for the debt of another" to be in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 6, p. 5676.]

Appeal from the District Court of the United States for the District of Colorado.

In the matter of the Ladies' Cash Store, a partnership, bankrupt. From an order allowing a claim in favor of H. E. Munson and T. E. Munson, E. M. Kelsey, as trustee, appeals. Affirmed.

Henry T. Rogers, Daniel B. Ellis, Lewis B. Johnson, Pierpont Fuller, and George A. H. Fraser, for appellant.

Charles L. Allen, and B. M. Webster, for appellees.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. About June 8, 1908, Addie T. Munson and Mary Munson formed a partnership under the name of the Ladies' Cash Store and contracted to buy a stock of goods at Sterling, Colo., for about $4,000. Addie T. Munson borrowed upon real estate security $2,000, which she turned over to the firm, and Mary Munson borrowed a like sum of the Logan County National Bank, giving as sureties therefor H. E. Munson and T. E. Munson, which she turned over to the firm, and with the $4,000 the firm paid for its stock of goods.

As an inducement to sign the Mary Munson note as surety, both Addie T. Munson and Mary Munson told the contemplated sureties that the indebtedness evidenced by the note "would be and become a partnership debt, and the first money derived from said business would be applied to the extinguishment of said indebtedness," and

this was communicated to the payee of the note before its execution or the making of the loan. The new firm, before any credit was extended to it, represented to the commercial agencies and the wholesale houses they were about to deal with that they owed banks $4,000. May 3, 1910, the partnership of the Ladies' Cash Store was adjudged an involuntary bankrupt, and E. M. Kelsey was appointed and qualified as trustee. H. E. Munson and T. E. Munson filed a claim, based upon the payment by them of the note to the Logan County National Bank, which was assigned to them by the bank. The trustee filed a motion to strike parts of the claim, and exceptions and objections to the claim. The referee refused to allow it, but his action was reversed by the District Court, and Mr. Kelsey, the trustee, appeals.

The case was submitted to the referee and the District Court upon the proof of claim, and motion to strike, and exceptions and objections of the trustee, and an agreed statement of facts. The statutes of Colorado contain this provision:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party charged therewith: * * * Second: Every special promise to answer for the debt, default or miscarriage of another person." Revised Statutes Colo. § 2666.

The case turns chiefly upon whether the alleged agreement of the partnership that an individual debt evidenced by said note would be and remain a partnership debt was within the provision of this statute; and, if so, was the alleged agreement by the partnership that the indebtedness would be and remain a partnership debt, or some note or memorandum thereof in writing, subscribed by the partners. [1] It is insisted that the claim itself did not state that there was such an agreement in writing. All the formalities required in ordinary pleadings do not apply to the filing of proof of a claim in bankruptcy. It is provided by section 57b:

"Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim."

In Re Dresser, 135 Fed. 495, 68 C. C. A. 207, the Circuit Court of Appeals of the Second Circuit said:

"It is contended by the appellant that the agreement of the firm of Dresser & Co., to be valid, must be in writing, and as no written agreement is filed with the proof, pursuant to section 57b of the law (Act July 1, 1898, c. 541, 30 Stat. 560), it must be presumed that no such writing exists, and therefore the proof is invalid on its face. The paper is, no doubt, evidence to establish the allegations of the proof of claim; but failure to plead it raises no presumption against its existence. Non constat the writing which the appellant considers necessary may be in the possession of the claimant, to be produced when an issue is presented requiring its production."

[2] In this case the parties expressly stipulated that all the members of the partnership "promised to and agreed with the firm of Munson & Munson (H. E. Munson and T. E. Munson) as an inducement to their signing as sureties said note of Mary Munson, that the indebtedness evidenced by said note would be and remain

a partnership debt," but did not state whether the promise and agreement were in writing or otherwise.

But the principal question in this case is: Was it necessary that the assumption of this debt by the partnership should be evidenced in writing under the provisions of the Colorado statute of frauds? The agreement on the subject was made to induce the sureties to sign the note, and while the note upon its face was the note of the individual, Mary Munson, and her sureties, upon which the partnership was not liable before it was executed and before the loan had been made, the partnership agreed it should become a partnership debt. The firm then had about $4,000 of property and no debts, and no reason can be assigned why the partnership could not thus assume this debt.

Was such an agreement a specific promise to answer for the debt, default, or miscarriage of another person? It is well recognized that, if the agreement be in effect a guaranty, it it within the statute, and is said to be collateral; while, where one promises, upon an independent consideration passing to him, to pay a debt, it is not embraced within the statute, but is said to be direct or original. If A. says to a merchant, Let B. have certain goods, and I will see you paid, or will guarantee that he will pay for them, that is ordinarily a collateral agreement, and void under the statute. But, on the other hand, if A. says to the merchant, Let B. have certain goods and I will pay for them, that is direct, not within the statute, and may be proven, though oral. In Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, the Flagstaff Silver Mining Company was in debt to Erwin Davis. The company and Davis made an agreement that J. N. H. Patrick should become manager as attorney in fact, and he appointed M. F. Patrick foreman of the mine, who in turn employed A. S. Patrick to transport ore. Davis, being interested in the transportation of ore, from which he was to be paid for past and future advances, orally promised to pay A. S. Patrick, and it was held that this was a direct promise and not within the statute of frauds. In that case the court quotes with approval from Emerson v. Slater, 22 How. 28, 43 (16 L. Ed. 360):

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

This court in Mine & Smelter Supply Co. v. Stockgrowers' Bank, 173 Fed. 859; 98 C. C. A. 229, said:

"Where the promise to pay the debt of another is not the chief purpose of the transaction in which it inheres, and a substantial and valuable consideration therefor inures directly to the benefit of the promisor, as in a case in which he obtains a conveyance of property in consideration of his promise to pay the debt of the grantor, or to pay an incumbrance upon the property, the promise does not fall within the statute, and no writing is necessary to support it. In cases of this character, the fact that the object of the promisors is not to answer for the debts, defaults, or miscarriages of others, but is to obtain substantial benefits or advantages to themselves, which they ac-

tually secure as the consideration for their agreements, distinguishes these promises from those within the statute, and makes them original agreements of the promisors, which are valid without writings."

See In re Dresser, 135 Fed. 495, 68 C. C. A. 207; Choate v. Hoogstraat, 105 Fed. 713, 46 C. C. A. 174; Humphreys v. St. Louis, I. M. & S. Ry. Co. (C. C.) 37 Fed. 307.

If the partnership, to enable one of the partners to borrow the necessary original capital to enable the firm to embark in business agreed that, if the contemplated sureties would sign a note of one of the members, the indebtedness should be and remain a partnership debt, and thereupon the sureties signed and the firm obtained the money, the agreement to assume the debt was not within the statute of frauds; and, it being agreed that such a contract was made, H. E. Munson and T. E. Munson were under the facts entitled to have their claim allowed, and all other questions argued become immaterial.

The action of the District Court is affirmed.